# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | ) ) ) ) |
| JOSEPH SHEELY, ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, CARLY TUNNO | ) ) ) ) |
| *Interested Parties-Appellants*, | ) ) ) |
| HAROLD R. FEEZLE, SUSAN E. SCHEUFELE, DAVID J. SCHEUFELE, ROLLERENA AUTO SALES, LLC, ROSEMARY MOZUCH, CHARLES MOZUCH, JON LUKE AFFELTRANGER, MARILYN FIGLEY, EDWARD E. BARNHOUSE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; LAURA MANN et al., | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Plaintiffs-Appellees*, | ) ) ) |
| v. | ) ) ) |
| NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION, | ) ) ) ) |
| *Defendants-Appellees*. | ) ) ) |

Nos. 24-3852, 24-3880

# PLAINTIFFS-APPELLEES' RESPONSE TO APPELLANTS' MOTIONS TO STAY DISTRICT COURT'S BOND ORDER

Appellants Joseph Sheely, Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno (collectively, "Appellants") have moved for this Court to stay the district court's January 16, 2025 order imposing an appeal bond on Appellants. [1] *See* App.Bond.Order, R.733, PageID#51926-938; Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1. For the reasons explained below, this Court should deny Appellants' motions.

## INTRODUCTION

The Federal Rules of Appellate Procedure allow every litigant dissatisfied with the outcome of the proceedings to appeal, Fed. R. App. P. 3, and special accommodations are made for those of limited means, Fed. R. App. P. 24(a). But the Federal Rules do not exempt litigants, even those of limited means, from the obligations imposed by the Rules and the laws underlying the cases to shift certain costs to the unsuccessful party. To the extent that cost-shifting deters frivolous appeals, that is a feature not a bug. There is no entitlement to pursue a frivolous appeal and leave the other side holding the bag on costs. To the contrary, the district court's discretion to order an appeal bond exists to prevent that scenario.

---

[1] While Appellants did not style their motions as seeking a stay pending appeal but rather as motions "to eliminate or reduce appeal bond," Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1, the docket for each case characterized these as stay motions, so Plaintiffs respond to them according to that characterization.

Because an appeal bond simultaneously deters some appeals and protects the important interests of appellees to not be left holding the bag on costs, district courts consider several factors including the would-be appellants' good faith, the financial ability of appellants, the strength of their appeal, and the likelihood that appellees will actually be able to recover fees. The district court here, informed by the experience of overseeing this class action and assessing the fairness of the settlement, balanced all those factors and concluded a bond in the full amount of recoverable costs was appropriate. That was a classic exercise of informed discretion, and there is no basis for disturbing it or staying it on appeal.

## PROCEDURAL BACKGROUND

On September 27, 2024, the district court entered a Final Approval Order, approving a $600 million settlement between Plaintiffs-Appellees ("Plaintiffs") and Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation ("Norfolk Southern"), overruling all objections, and concluding that the settlement was fair, reasonable, and adequate. Final.Appr.Order, R.557, PageID#14580-586. This order issued after the court "reviewed extensive briefing," Bond.Order, R.733, PageID#51931, conducted an over-three-hour fairness hearing where it heard arguments from the parties and objectors who opted to make arguments, and considered all written objections. *See* Fair.Hear.Tr., R.553, PageID#14423-541.

Within hours of the court's order issuing, Appellant Sheely's counsel, David Graham, filed a notice of appeal, purportedly on Sheely's behalf. Sheely.Not.of.App., R.558, PageID#14587. After the notice was filed, Sheely stated publicly that he told Graham not to file an appeal in his name.[2]

Believing the appeal to potentially be in bad faith, Plaintiffs moved on October 7 for the district court to require Sheely to post an appeal bond of $850,000 pursuant to Federal Rule of Appellate Procedure 7. Pltfs.Bond.Mot., R.567, PageID#14646. Plaintiffs also indicated an openness to an evidentiary hearing to determine Sheely's desire to appeal. *See* Pltfs.MOL.ISO.Bond.Mot., R.567-1, PageID#14650.

The next day, instead of moving to stay the appeal pending resolution of the bond motion, Graham filed a separate appeal on behalf of previously unrepresented Appellants Troyan, Freeze, Lynch, and Tunno.[3] *See* Troyan.Not.of.App., R.570, PageID#14768. That same day, the district court ordered Sheely to respond to Plaintiffs' bond motion by October 9 at 4:30PM. Sheely.Resp.Order, R.573,

---

[2] Ron Verb, *Ron Verb Show Monday, September 30, 2024*, NewsRadio 570 WKBN, at 28:45-31:42 (Sept. 30, 2024), https://tinyurl.com/52sjub6r; *see also* Benjamin Duer, *Pastor Says He 'Never Gave Permission' to File Appeal Over Norfolk Southern Settlement*, Canton Repository (Oct. 1, 2024), https://tinyurl.com/yck9md39.

[3] Plaintiffs acknowledge an ongoing dispute regarding Tunno's standing to appeal. However, to the extent Tunno is appealing, Plaintiffs are amenable to her being included in the bond order.

PageID#14773. Sheely responded, *see* Sheely.MOL.Opp.Bond.Mot., R.614-1, PageID#25136-160, but the court rejected his response for failing to comply with various aspects of the case management plan. Reject.Order, R.648, PageID#45669. Sheely filed a compliant response a week later. Sheely.Corr.MOL.Opp.Bond.Mot., R.660, PageID#46292-307. Attached to the response memorandum was a declaration from Sheely, the last sentences of which stated, "The bond requirement added insult to injury for us. Therefore, I choose not to pursue this appeal." Sheely.Decl., R.660-1, PageID#46311. This statement indicated Sheely had either decided against pursuing the appeal or at a minimum would abandon the appeal if a bond were required.[4] But again, instead of moving to stay the appeal pending resolution of the bond issue, Mr. Graham pressed on and filed an opening brief on December 2.[5] Sheely.Br., Case No.24-3852, Dkt.24.

---

[4] This ambiguity was not resolved until after Plaintiffs moved in this Court for Graham to explain why Sheely's appeal should not be dismissed. *See* Pltfs.Mot.for.Misc.Rel., Case No.24-3852, Dkt.30. Sheely's counsel responded to Plaintiffs' motion on December 23, clarified Sheely's statement reflected only a contingent intent not to appeal if a bond were required, Sheely.Ans., Case No. 24-3852, Dkt.31-1, and attached a declaration from Sheely dated December 2, 2024, indicating he had decided to proceed with the appeal, Sheely.Decl., Case No.24-3852, Dkt.31-2. There is no evidence the declaration was filed with the district court even though its header indicates it was meant to be filed in that court.

[5] Due to a failure to comply with certain Sixth Circuit rules, Sheely's original filing was rejected, Brief.Letter, Case No.24-3852, Dkt.25, and he submitted a corrected brief on December 9. Sheely.Corr.Br., Case No.24-3852, Dkt.26.

Plaintiffs filed a reply in support of the bond motion. R.667, PageID#46364-375. They also moved on November 8 to have the district court require Appellants Troyan, Freeze, Lynch, and Tunno ("Troyan Appellants") to post a bond as well. Pltfs.MOL.ISO.Bond.Mot., R.671-1, PageID#46665-676. Instead of moving to stay that appeal pending resolution of the bond issues, Graham again pressed forward and filed an opening brief on behalf of the Troyan Appellants on December 10.[6] Troyan.Br., Case No.24-3880, Dkt.31. The Troyan Appellants did not respond to Plaintiffs' bond motion until the district court ordered on January 2, 2025 for them to respond by January 7. Troyan.Resp.Order, R.721-2, PageID#51719-720; Troyan.MOL.Opp.Bond.Mot., R.725-1, PageID#51726-736.

The district court entered an order on January 16, requiring Appellants to post an appeal bond in the amount of $850,000. Bond.Order, R.733, PageID#51926. The total accounted for $25,000 in appeal-related taxable expenses and $825,000 in additional administrative expenses that are estimated to be incurred by the settlement administrator as a result of the delay in administering the settlement and processing multiple payments to the same individuals. Bond.Order, R.733, PageID#51926.

---

[6] The Troyan opening brief was also rejected for failing to comply with Sixth Circuit rules, Brief.Letter, Case No.24-3880, Dkt.32, and a compliant brief was filed on December 12. Troyan.Corr.Br., Case No.24-3880, Dkt.33.

Appellants filed motions to stay the bond order in their respective cases on January 19. Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1.[7]

## ARGUMENT

### I.    Appellants' Stay Motions Should Be Denied.

"A stay pending appeal is a matter of judicial discretion, 'not a matter of right.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 568 (6th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).  Courts consider four factors when deciding whether to exercise that discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

[7] To the extent Appellants' motions are properly characterized as motions for a stay pending appeal, they are out of compliance with the Federal Rules in several ways.  Motions for a stay pending appeal are governed by Federal Rule of Appellate Procedure 8.  That rule indicates that "[a] party must ordinarily move first in the district court."  Fed. R. App. P. 8(a)(1).  A party may be excused from that initial procedural step, but if it does so it "must" show in its motion to this Court "that moving first in the district court would be impracticable." *Id.* 8(a)(2)(A). Appellants neither moved for a stay in the district court nor showed in their motions before this Court that doing so would be impracticable.  Additionally, when moving for a stay in this Court, "[t]he moving party must give reasonable notice of the motion to all parties." *Id.* 8(a)(2)(C).  No notice was given to Plaintiffs before Appellants filed their motions.  For these reasons alone, this Court should decline to entertain the motions.

*Nken*, 556 U.S. at 434. "The first two factors … are the most critical." *Id.* "[Appellants], as the movants, bear the burden of showing that a stay is warranted under the circumstances." *Hargett*, 977 F.3d at 568. Appellants fail at each factor, so their motion should be denied.

### A. Appellants Have Not Made a Strong Showing That They Are Likely to Succeed on the Merits.

A request for an appeal bond requires a district court to determine, first, whether a bond is appropriate, and if so, how much the bond should be. *In re Polyurethane Foam Antitrust Litig.*, 178 F.Supp.3d 635, 638 (N.D. Ohio 2016). Both determinations are reviewed deferentially under an abuse of discretion standard. *Id.*; *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). The district court did not abuse its discretion here, so Appellants cannot make a strong showing of likely success on the merits.

1. To determine whether an appeal bond should be imposed, courts consider (1) whether appellants have engaged in bad faith or vexatious conduct; (2) the merits of the appeal; (3) the appellants' financial ability to post a bond; and (4) the risk that appellants would not pay appellees' costs if the appeal is unsuccessful. *Polyurethane*, 178 F.Supp.3d at 638.

***Bad faith or vexatious conduct.*** The district court was intimately familiar with the class action proceedings below and with the conduct of Appellants' counsel and Sheely's equivocation. Drawing on that experience, the court concluded this

factor favored imposing an appeal bond. Bond.Order, R.733, PageID#51930. The court highlighted the uncertainty over whether Sheely wanted to appeal in the first place and the dispute about whether Tunno can appeal given that Plaintiffs have no record of her filing an objection to the settlement. Bond.Order, R.733, PageID#51928-930.

Appellants' vexatious behavior goes beyond these two episodes. Before the district court, Sheely asserted that Norfolk Southern, EPA, and other governmental agencies were hiding information from the community. Sheely.Obj., R.485, PageID#7306-309. This accusation is baseless and serves only to stoke fears in the community and generate misplaced objections to the settlement.[8] Indeed, the settlement was not based on EPA data. Moreover, when Sheely suggested a whistleblower claimed to have "exposed shocking efforts by EPA to avoid learning the truth," Sheely.Obj., R.485, PageID#7306-307 & n.1, EPA refuted the whistleblower's claims.[9] Undeterred, Sheely filed a declaration from the whistleblower on the public docket. Kroutil.Decl., R.547, PageID#13474-496.

---

[8] Similar baseless allegations were asserted by Graham on behalf of another objector, although by the time Graham filed that objection, his client had already opted out—a fact Graham did not disclose to the district court. Wallace.Obj., R.486, PageID#7971-990.

[9] Stephanie Elverd, *EPA Calls Whistleblower Reports False*, Morning J. (May 16, 2024), https://tinyurl.com/4vb92vhh.

This vexatious behavior has continued on appeal, where the briefs are rife with irrelevant and spurious accusations against Class Counsel. For example, Appellants accuse Class Counsel of misleading the class with a video of "plaintiffs' expert" Dr. Arch Carson that is inconsistent with other purported experts. Sheely.Corr.Br., Case No.24-3852, Dkt.26.at.20-24; Troyan.Corr.Br., Case No.24-3880, Dkt.33.at.22-26. But Counsel stated at the fairness hearing (which David Graham and Sheely attended) that they did not retain Dr. Carson as an expert, so this accusation is baseless. Fair.Hear.Tr., R.553, PageID#14477. Similarly, Appellants accuse Class Counsel of colluding with Norfolk Southern in reaching the settlement, mainly based on Counsel not disclosing expert reports to the court or class members. *See* Sheely.Corr.Br., Case No.24-3852, Dkt.26.at.24-25, 32-34; Troyan.Corr.Br., Case No.24-3880, Dkt.33.at.26-27, 34-36. These accusations are unfounded as expert reports are exchanged among the parties not disclosed to the court, the settlement was reached before expert reports were due to be disclosed in the underlying litigation, and the terms of the settlement—which were negotiated with the help of retired district court Judge Layn R. Phillips—prohibited Counsel from sharing expert reports with the class. *See* Settlement, R.452-2.§XVIII.P, PageID#6035 (prohibiting Class Counsel "[u]nless inconsistent with their ethical obligations or order of the Court" from using or "allow[ing] to be used, any work product derived from any discovery" in the case). Finally, Appellants did not spare the district court

9

in these baseless accusations, leveling charges of personal bias. *See* Sheely.Corr.Br., Case No.24-3852, Dkt.26.at.46-51; Troyan.Corr.Br., Case No.24-3880, Dkt.33.at.48-53.

All this conduct extends the proceedings, generates unnecessary costs, distracts from the merits, and raises serious concerns about the extent to which the objectors, rather than their counsel, have a true interest in this appeal. Other courts have rightfully found this type of behavior to be vexatious. *Polyurethane*, 178 F.Supp.3d at 639-40.

**Merits of the appeal.** Established caselaw directs the district court to evaluate the merits of the appeal in assessing the bond. *See, e.g.*, *Polyurethane*, 178 F.Supp.3d at 640. The district court concluded this factor weighed in favor of imposing a bond. Bond.Order, R.733, PageID#51931. It was eminently correct.

Appellate courts review a "district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion." *Fidel v. Farley*, 534 F.3d 508 ,513 (6th Cir. 2008). Overcoming this is "a serious uphill battle." *Polyurethane*, 178 F.Supp.3d at 640. In this case, "[t]he record resoundingly supports the fairness of the settlement." Bond.Order, R.733, PageID#51931. Plaintiffs secured a $600,000,000 settlement for the class, which Class Counsel believes is the largest settlement in a railroad-derailment class-action suit. *See* Fair.Hear.Tr., R.553, PageID#14504. While class members had an opportunity to opt out, given the size

and nature of the settlement only 417 did.  Fenwick.Decl., R.518-7, PageID#11146.
And even fewer objected.  Fenwick.Decl., R.518-7, PageID#11146.  Those actions
of the class powerfully underscore the fairness of the settlement.  Nor do Objectors'
appeal briefs improve the likelihood of appellate success.  Beyond the baseless
accusations discussed above that Appellants make on appeal, much of their critique
with the substance of the settlement is simply a rehash of their arguments below.
The district court was intimately familiar with those complaints and had already
overruled all these objections at the fairness hearing and in its approval order.
Fair.Hear.Tr., R.553, PageID#14537; Final.Appr.Order, R.557, PageID#14584.  The
district court was thus eminently correct, and certainly did not abuse its discretion,
in finding this factor favored imposition of the bond.

*Appellants' financial ability.*  It is the appellants' burden to demonstrate that
a bond would constitute a barrier to appeal.  *Polyurethane*, 178 F.Supp.3d at 641-42.
The district court found that Appellants failed to meet this burden.  Bond.Order,
R.733, PageID#51932-933.  There is no basis for overturning that finding.

Sheely made only a conclusory assertion that he was "not in a financial
position to post any sort of a bond."  Sheely.Decl., R.660-1, PageID#46309.  This
kind of conclusory declaration cannot suffice to demonstrate financial inability to
post a bond.    While the other Appellants provided more detail regarding their
respective financial positions, Troyan.Decl., R.725-3, PageID#51815; Freeze.Decl,

R.725-4, PageID#51817; Lynch.Decl., R.725-5, PageID#51820-821; Tunno.Decl., R.725-6, PageID#51823-824, the district court was not unreasonable (much less clearly erroneous) to find that Appellants' conduct belies such assertions. The court noted that no Appellant is proceeding *in forma pauperis* in these appeals, Bond.Order, R.733, PageID#51932, a factor the *Polyurethane* court emphasized. 178 F.Supp.3d. at 642. Even more telling, Appellants' own actions are inconsistent with the notion that their financial ability to pursue this appeal depends on resolution of the bond issues. As the district court noted, despite the pendency of the bond proceedings and the possibility of a sizable appellate bond, Appellants went forward in briefing their appeals, rather than asking for a stay of appellate schedules until the bond issue was resolved. Bond.Order, R.733, PageID#51932. It is not unreasonable to conclude this action signaled an ability and willingness to forge ahead even if a bond were imposed.

Appellants resist this conclusion by implying they had to file their opening briefs to comply with Federal Rule of Appellate Procedure 31(a)(1). Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1.at.16; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1.at.16. But that is simply not the case. Appellants could have moved to stay the briefing schedule pending resolution of the bond issue or asked for an extension of their briefing deadline to account for disposition of the bond proceedings. But far from acting as if the appeal were contingent on whether a bond

was required or the amount of any such bond, Appellants largely ignored the bond proceedings and acted as if they were indifferent to their outcome. It is hard to believe even a modest bond would have been an insuperable financial barrier to appeal. Nonetheless, Appellants proceeded as if the outcome of the bond proceedings were irrelevant to their appellate plans. The district court was well within its discretion to take these actions at face value.

Because Appellants failed to carry their burden of demonstrating an inability to post an appeal bond, the district court was correct on this front.

***Risk of nonpayment of costs.*** The district court also found this factor favored imposing the bond. Bond.Order, R.773, PageID#51931-932. As Plaintiffs have indicated, though Class Counsel requested 3% of the settlement fund to cover costs, actual costs of this litigation were going to exceed that amount before any appeals were taken. *See e.g.*, Fair.Hear.Tr., R.553, PageID#14524-526. These costs continue to mount as a direct result of these appeals, by virtue of the costs inherent in the appellate process, but more significantly in the need to continue retaining the settlement administrator and its accompanying costs during the pendency of these appeals. And given Sheely's initial reticence to pursue appeal at all and the Troyan Appellants' refusal to respond to Plaintiffs' bond motion until ordered by the court, Plaintiffs have reasonable fear that none of Plaintiffs' costs will be paid should

Appellants lose their challenges on appeal either through dismissal or affirmance of the district court.[10]

As with the other factors, the district court did not abuse its discretion in finding that this factor favored imposition of an appeal bond.

*   *   *

Because all four factors favor imposing the bond, the district court did not abuse its discretion by imposing an appeal bond on Appellants. That means Appellants have not made a "strong showing" of likelihood of success on the merits on this front. *Nken*, 556 U.S. at 434.

2. A district court can impose a bond in an "amount necessary to ensure payments of costs on appeal." Fed. R. App. 7. And while appellate courts have reached different conclusions as to the extent of what this includes, all agree that costs discussed in Federal Rule of Appellate Procedure 39 and 28 U.S.C. §1920 are included. *Polyurethane*, 178 F.Supp.3d at 642 (discussing various circuits'

---

[10] It does not appear that Sheely contested the risk of non-payment below or in his motion before this Court. *See generally* Sheely.MOL.Opp.Bond.Mot., R.660, PageID#46292-307; Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1. Any argument on this front is, therefore, forfeited. *See United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006); *see also Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995). And while the Troyan Appellants contested this issue before the district court, Troyan.MOL.Opp.Bond.Mot., R.725-1, PageID#51731, they do not raise any argument on this front in their motion before this Court. *See generally* Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1. This argument is, therefore, also forfeited. *Cf. Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013).

approaches).  Courts in this Circuit have said that a reasonable estimate of appeal-related expenses suffices to include such costs in the appeal bond.  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 5147222, at *3 (W.D. Ky. Dec. 13, 2010).  Class counsel estimated, and the district court approved, taxable appeal costs equal to $25,000.  *See* Bond.Order, R.733, PageID#51934.  This number is in line with other district courts in this Circuit.  *See, e.g.*, *Brandewie v. Wal-Mart Stores, Inc.*, 2016 WL 698110, at *3 (N.D. Ohio Feb. 22, 2016) (awarding $25,000 for taxable costs on appeal).

Despite citing no case law that indicates Plaintiffs had to delineate their appeal costs, Appellants argue the district court abused its discretion in imposing this amount because Plaintiffs must file their briefs and other papers before this Court electronically and because Appellants believe Plaintiffs will incur no costs on appeal. Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1.at.5-8; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1.at.5-8.  This is mistaken as a matter of law and reality.  First, courts in this Circuit have already acknowledged that including printing and copying costs in a bond is reasonable even though this Court does not require paper copies to be filed.  *Vassalle v. Midland Funding, LLC*, 2015 WL 13632108, at *1 (N.D. Ohio Jan. 27, 2015).  And under the electronic filing rule, courts have still found taxable appeal costs in the amount requested here to be reasonable.  *Brandewie*, 2016 WL 698110, at *3 (awarding $25,000 for taxable costs on appeal).  Additionally, just

because two counsel on Plaintiffs' appellate team were admitted to the Sixth Circuit bar before this case, *see* Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1.at.6; Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1.at.6, that does not indicate every member of the team was. Therefore, it was also reasonable to include court application fees in the bond amount.

Plaintiffs' request for $25,000 to cover taxable costs on appeal was reasonable, so the district court did not abuse its discretion in setting this amount.

Finally, the district court imposed $825,000 for the appeal bond to cover administrative costs arising from the continued retention of the settlement administrator during the delay brought on by the appeals. *See* Bond.Order, R.733, PageID#51937 (imposing $850,000 bond order to cover appeal related taxable expenses ($25,000) and administrative expenses ($825,000)). The Senior Director of the settlement administrator indicated an appeal that delayed the settlement up to a year would lead to an increase in administrative expenses of approximately $825,000. Fenwick.Decl., R.567-2, PageID#14660-661. That estimate is likely conservative given the potential for the appellate process to take more than a year and the substantial expenses associated with the perpetuation of the settlement administration process, which includes ongoing responsibility of "maintaining the Settlement Website; establishing the qualified settlement fund and complying with its tax filing, paying and reporting obligations; receiving and processing Claims

forms; … sending payments under the terms of the Settlement; … and performing such other settlement administration matters set forth." Settlement, R.452-2§II.D, PageID#6008. When one also accounts for the staffing requirements to fulfill all these responsibilities for a class this size, it is clear that Plaintiffs' requested amount for administrative expenses is eminently reasonable. Indeed, as the district court pointed out, neither setting a bond to cover one year of administrative expenses nor the requested amount is out of step with bond awards in other class action cases. Bond.Order, R.733, PageID#51936 (collecting cases).

Appellants' main argument against the district court's imposition of the $825,000 amount is that administrative costs cannot be included in Rule 7 costs absent an underlying statute that permits prevailing parties to recover such costs. Sheely.Stay.Mot., Case No.24-3852, Dkt.35-1.at.9-13 (discussing cases from various circuits); Troyan.Stay.Mot., Case No.24-3880, Dkt.40-1.at.9-13 (same).

But while Appellants are correct that the Sixth Circuit has looked to whether any underlying statutes call for a degree of cost-shifting, *Cardizem*, 391 F.3d at 817, the Sixth Circuit has also found that statutes analogous to those at issue here suffice, *id*. This class action is premised on multiple different state statutes and at least some of them provide for shifting the costs in dispute here. For the Pennsylvania Appellants, *see* Lynch.Decl, R.725-5, PageID#51820; Tunno.Decl., R.725-6, PageID#51823, a Pennsylvania statute says that in a civil action for agricultural crop

17

destruction (Count X of the Operative Complaint, R.138, PageID#1858-860), an aggrieved owner can "obtain appropriate relief, including … reasonable attorney fees and other costs associated with the litigation." 42 Pa. C.S.A. §8313(a). And for the Ohio Appellants, Ohio Revised Code §§959.02, 959.99(B) (Count XII in the Operative Complaint, R.138, PageID#1861-863) make the malicious or willful "killing or injuring" of certain domestic animals that are the property of another a second-degree misdemeanor. Ohio Revised Code §2307.60(A)(1) then permits anyone injured "in person or property by a criminal act" to "recover full damages in, a civil action," and he "may recover the costs of maintaining the civil action" as well as authorized attorney's fees. Both the Pennsylvania and Ohio laws are similarly phrased to the Tennessee statute this Court considered in *Cardizem* and held sufficiently permitted recovery of settlement administrative costs. 391 F.3d at 817 (quoting Tenn. Code Ann. §47-18-109's allowance for recovery of "damages incurred, including reasonable attorney's fees and costs" (emphasis omitted)). Plaintiffs' continued retention of the settlement administrator in this case qualifies as "costs of maintaining the civil action" or "costs associated with the litigation." The district court, therefore, properly included Plaintiffs' request for $825,000 in the bond, and this Court can affirm on those grounds. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (appellate court can affirm district court "on any

grounds supported by the record, even if different from those relied on by the district court").

Moreover, Appellants do not contest the district court's assertion of inherent power to require the bond. *See* Bond.Order, R.733, PageID#51937. As discussed in *Polyurethane*, while *Cardizem* discussed one method of determining includable fees, it is not necessarily the exclusive method. 178 F.Supp.3d at 644. District courts have "inherent power to require the posting of cost bonds." *Id.* (quoting *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1335 (11th Cir. 2002), in turn citing *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 916 (1st Cir. 1988)); *see also Adsani v. Miller*, 139 F.3d 67, 70 n.2 (2d Cir. 1998) (noting "appeal bond[s]" are also known as "cost bond[s]"). "Notably, courts possess these powers 'even if procedural rules exist which [govern] the same conduct.'" *Pedraza*, 313 F.3d at 1335 (brackets in original) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)).

Because the district court was able to include administrative costs according to underlying statutes or its inherent power, it did not err. The bond amount is proper, and this Court should deny the stay motions because Appellants have not shown a likelihood of success on the merits.

## B.  Appellants Have Not Demonstrated That They Will Suffer Irreparable Injury Absent a Stay.

Because Appellants did not style their motions as motions for a stay pending appeal, they do not discuss the equitable factors considered in a stay motion at length.  To the extent they argue before this Court that they are unable to pay the $850,000 bond (or any bond amount), Plaintiffs understand this to be an argument that Appellants would be irreparably injured absent a stay.

Even under this interpretation of Appellants' motions, however, they still have failed to carry their burden to demonstrate an irreparable injury if this Court does not stay the bond order.  An alleged inability to pursue this appeal only qualifies as irreparable injury if the appeal is meritorious and Appellants would lack the financial ability to pursue the appeal if a bond is required.  The district court found against Appellants on both factors.

## C. Issuance of the Stay Would Substantially Injure Class Counsel.

As indicated in the filings below, Class Counsel has serious concerns regarding Appellants' willingness to pay any appeal costs should the appeal end in dismissal or affirmance.  Although the Troyan Appellants indicated below that there was no risk of non-collection because they all live within the geographic jurisdiction of the court, Troyan.MOL.Opp.Bond.Mot., R.725-1, PageID#51731, that is non-responsive.  As a practical matter, it will be virtually impossible to wrest payment from Appellants.  Moreover, Appellants have pointedly failed to reiterate any

assurances in this Court, suggesting that Class Counsel will be left holding the bag for costs that are uniquely incurred by Appellants decision to continue to object on appeal, despite equivocation about interest in appeal and/or failing to elaborate on objections below. The appeal bond was designed to protect against just this risk of non-payment.

Granting a stay of the bond order pending appeal would thus underscore Class Counsel's concerns while eliminating the protections the rules provide—namely, the appellate bond. Simply put, if the appeal ends in dismissal or affirmance, Class Counsel is worried it will be left without any payment of its costs. And if this Court stays the bond order, the security that was meant to allay Class Counsel's concerns will be eliminated. The real risk of leaving Class Counsel without any recovery of costs at the end of this appeal demonstrates that Class Counsel will be substantially injured if this Court enters a stay. For that reason, the stay should be denied.

### D. The Public Interest Favors Denying the Stay Motions.

Finally, appeal bonds serve at least two purposes. First, they "protect the rights of appellees brought into appeals courts by … appellants." *Adsani*, 139 F.3d at 75. Second, appeal bonds deter frivolous suits because "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond." *Pedraza*, 313 F.3d at 1333. Both purposes serve the public as well because reducing the number of frivolous appeals and protecting the rights of parties who are victorious in lower

courts is important to an efficiently functioning judicial system. Especially in cases like this, where the appellees face a real risk of not recovering appeal costs, the public is benefitted by making appellants put some skin in the appeal game. Imposing a stay, conversely, undermines the public's interest in an efficient judicial system as there is a probability that Appellants' case turns out to be meritless and there will have been no reason for them to think twice about bringing that meritless appeal because there was no cost imposed upon them. Thus, issuing a stay would send a message that appellants need not carefully consider before appealing adverse outcomes, and the result could be a clogging of appellate courts with meritless matters that drown out more meritorious cases.

*    *    *

Appellants have not made a strong showing of likelihood of success on the merits of the bond issue, nor have they demonstrated an irreparable injury absent a stay. A stay would also substantially injure Class Counsel's interest in ensuring it can recover appeal-related costs. Finally, a stay would negatively affect the public's interest in an efficient judicial system. The requests for a stay should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court deny Appellants' motion to stay the district court's bond order.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellees*

January 28, 2025

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,152 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

January 28, 2025

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement