Case Nos. 24-3852, 24-3880
IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

In re: EAST PALESTINE TRAIN DERAILMENT
---------------------------------
REV. JOSEPH SHEELY, ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, and CARLY TUNNO,

    Interested Parties-Appellants

HAROLD R. FEEZLE, On Behalf of Themselves and All Others Similarly Situated; SUSAN E. SCHEUFELE, On Behalf of Themselves and All Others Similarly Situated; DAVID J. SCHEUFELE, On Behalf of Themselves and All Others Similarly Situated; ROLLERENA AUTO SALES, LLC, On Behalf of Themselves and All Others Similarly Situated; MARILYN FIGLEY, On Behalf of Themselves and All Others Similarly Situated; ROSEMARY MOZUCH, On Behalf of Themselves and All Others Similarly Situated; CHARLES MOZUCH, On Behalf of Themselves and All Others Similarly Situated; JON LUKE AFFELTRANGER, On Behalf of Themselves and All Others Similarly Situated; EDWARD E. BARNHOUSE, On Behalf of Themselves and All Others Similarly Situated; LAURA MANN,

    Plaintiffs - Appellees

v.

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION,

    Defendants – Appellees

_____/

**REPLY IN SUPPORT OF
MOTIONS TO ELIMINATE OR REDUCE APPEAL BOND
ON BEHALF OF
INTERESTED PARTIES-APPELLANTS**

**Submitted by:**
David M. Graham, *pro hac vice*
Attorney for Appellants
210 E. Forsyth St.
Jacksonville, FL 32202
(904) 567-6529

# REPLY TO PLAINTIFFS-APPELLEES' "PROCEDURAL BACKGROUND"

At the outset, this Court may well wonder whether it has been asked to resolve some dispute among 3rd graders throwing tantrums. Plaintiff-appellees (read "class counsel") unleash a litany of nitpicking having nothing to do with the present Motion, a classic "throw it against the wall, hope something sticks" tactic.

For example, class counsel again resurrect their ridiculous doubt whether Rev. Sheely authorized this appeal—even though, after raising the issue before both this Court and the district court based on information *de hors* the record, they withdrew the allegation when faced with Rev. Sheely's contrary sworn declaration (this Court's Dkt. 31-2)—as Judge Pearson noted (R. 733, PageID.51929). And even though they concede (Answer, p. 4) Rev. Sheely's statement in response to their bond motion was at worst ambiguous ("This statement indicated Sheely had either decided against pursuing an appeal or at a minimum would abandon the appeal if a bond were required."), and that the ambiguity was removed by this Court's Dkt. 31-1, yet here they are, maniacally beating the dead horse.

Inexplicably, class counsel next whine, first, that Rev. Sheely promptly appealed—they identify no legal reason he was obligated to delay. Then they complain Rev. Sheely answered their motion for appeal bond but, because Judge Pearson applied a blatant double standard (class counsel filed motions with single-spaced quotations and footnotes, but Rev. Sheely was prohibited from doing so),

1

Rev. Sheely had to refile his answer (the substance of which they entirely ignore). Next, they object Rev. Sheely timely filed his brief on appeal; they suggest he was—by no known rule or legal principle—required to instead seek a stay. Of course, since they despicably set in train a public outcry that, by appealing, Rev. Sheely was delaying distribution of settlement funds, causing Rev. Sheely to be unmercifully harassed, threatened, and pressured by the mob (as they intended), any notion Rev. Sheely should have exacerbated the delay to which they so vociferously objected is mystifyingly self-contradictory. But for class counsel, such grotesque hypocrisy is just another tactic—when your position is devoid of factual or legal merit, try smoke and mirrors.

This goes along with class counsel's unfathomable contention that, because undersigned counsel, when filing the Motion to Eliminate or Reduce Appeal Bond, chose "motion for stay" from PACER's dropdown menu of limited options, this means the present motion is *actually* one for stay defies comprehension by rational minds. It is axiomatic that labels are irrelevant; a motion is evaluated and understood by its substance. *Law Office of John H Eggertsen, P.C. v. C.I.R.*, 800 F.3d 758, 765 (6th Cir. 2015); see also F.R.Civ.P. 8 ("All pleadings shall be so construed as to do justice."). All the clamoring about motions for stay is just another putrid red herring.

> The substance of the motion, rather than its form, controls our inquiry. *E.g., BBCA, Inc. v. United States*, 954 F.2d 1429, 1431-32 (8th Cir.),

cert. denied, 506 U.S. 866, 113 S.Ct. 192, 121 L.Ed.2d 136 (1992);
see also *United States v. Hess*, 982 F.2d 181, 185 (6th Cir.1992).

*Brown v. Local 58, I.B.E.W., AFL-CIO*, 76 F.3d 762, 768 (6th Cir. 1996)

Class counsel then double down, advancing the identical xylocephalic theory—that appellants Troyan, Freeze, Lynch, and Tunno should similarly have sought a stay pending appeal in response to the second motion for appeal bond, instead of timely filing their appeal, still without citation to authority or a scintilla of logic. Such repetition merely makes class counsel error prone.

## REPLY TO ARGUMENT

**Issue I: The appeal bond imposed by the district court is contrary to law, unsupported by fact, and an abuse of discretion.**

### Standard of Review

Class counsel ignore the standard for review of appeal bonds[1]. Therefore, per F.R.A.P. 27(a)(4), Rev. Sheely can say no more on the subject.

### Analysis

**A. Bad faith/vexatious conduct**

Again, class counsel lead with supposed "uncertainty"—which only ever existed in their own minds—over whether Rev. Sheely intended to appeal. They

---

[1] Instead, trying mightily to force a square peg into a round hole, they discuss only the review standard for stays pending appeal. No appellant either seeks or desires such a stay; it is class counsel who sought additional time to file their briefs, while bellyaching incessantly that delay is inimical to the interests of class members (a group that includes appellants).

have previously conceded the point, so it is simply irrelevant. Their continued baseless speculations do not evidence bad faith.

That class counsel intend to challenge Tunno's standing to appeal in their appeal brief, based on the hearsay declaration of Scott Fenwick, FRE 802; *Sigler v. American Honda Motor Co.*, 532 F.3rd 469, 480-1 (6th Cir. 2008), is likewise irrelevant. There is no doubt as to the standing of appellants Sheely, Troyan, Lynch or Freeze. That in no way evidences bad faith or vexatiousness.

Returning to their childish tantrums, class counsel assert that, in district court, Rev. Sheely or undersigned counsel (on behalf of a non-appellant) made "baseless accusations" that EPA and Norfolk Southern possessed evidence which they were withholding from public scrutiny. Such allegations were entirely true (R. 551-3, PageID#.13704—declaration of Scott Smith, ¶3, *inter alia*). The supposed "rebuttal" by EPA (https://tinyurl.com/4vb92vhh—not part of the record, not issued until January, **2025**) concerns whether EPA's airplane flew on or before a certain date[2]—***nothing*** about withholding toxicity measurements. Again, no bad faith here.

Class counsel assert that appellants' briefs on appeal are "rife with irrelevant and spurious accusations against class counsel." Whether Dr. Carson was retained as an expert *witness*, he was presented as class counsel's "*expert*" to support the

---

[2] The "rebuttal" *admitted* EPA's airplane did not collect air samples until 4 days after the Feb. 3, 2022 derailment—the plane first collected samples on Feb. 7.

settlement. They also claim the Settlement Agreement, §XVII.P., precludes them from sharing their expert's report with their clients. Baloney. Attorneys have no work product or other privilege to withhold information from *clients* (see Sheely appeal brief, pp. 32-34)[3]. And appellants' briefs (Rev. Sheely, pp. 47-52) indeed do charge Judge Pearson with bias—which class counsel make no attempt to rebut with either record evidence or cited authority. None of this is "vexatious".

Notably, class counsel cite only N.D. Ohio district court cases; they ignore all the appellate precedents cited in appellants' Motion.

**B. The merits**

Despite having had appellants' briefs in hand for upwards of 6 weeks, class counsel continue to rely on *ipse dixit*, completely ignoring the actual arguments on appeal and relying on boilerplate generalities to denounce these appeals as lacking merit. For present purposes, therefore, appellants' merits briefs stand unrebutted.

**C. Appellants' financial ability**

Class counsel ignore Rev. Sheely's declaration (R. 660-1, PageID#.46309) detailing his modest economic circumstances and poor health and inability to post any bond (*id.*, PageID#.46311). They acknowledge the other appellants all filed declarations of inability to post anything like an $850,000 bond.

Class counsel urge that, because appellants have not sought *forma pauperis*

---

[3] Trying to prevent client oversight by a contract with *adverse parties* bespeaks a deplorable ethical standard.

status, they must be able to post bond of $850,000. That is absurd, for reasons detailed in the pending Motion but utterly ignored by class counsel, and thus unrebutted. Again, class counsel cite only the same district court case (*Polyurethane*)—proving at most that the N.D. Ohio district court shares erroneous understandings among its judges. Class counsel ignore the plethora of contrary appellate decisions cited in the Motion.

The idea that appellants somehow admitted ability to post bond by timely filing their briefs on appeal bespeaks only apex sophistry. Appellants correctly anticipated they must demonstrate the merits of their appeals—and, as above noted, that demonstration so far stands unrebutted. Appellants had/have neither desire for stay nor reason to request one, AND HAVE NOT DONE SO.

**D. Risk of nonpayment of costs**

Class counsel claim, as usual *ipse dixit*, they have already spent the $18 million set aside for costs and expenses—although at the time final judgment was entered, they still had almost $13 million remaining[4]. They admit appeal was immediately filed, and have claimed the appeal halted all settlement distributions. So where did that $13 million go? They claim their costs "continue to mount", but (in what is now their fourth submission on appeal bonds), fail to identify, still less

---

[4] Meanwhile, class counsel admit the $600 million settlement fund is earning interest. Banks are paying nearly 4% interest (it was higher when these appeals were filed), so the appeals are/should be generating some $24 million in interest annually, or $720,000 on the $18 million costs component.

6

document, a single farthing.

Although all appellants are residents of Ohio or Pennsylvania, class counsel continue to rely on a case in which *non-residency* was deemed a factor increasing risk of nonpayment. And class counsel still cannot identify any costs they contend are legitimately taxable—they repeat earlier speculation about "copying charges", but 6 days before their extended briefing deadline, can specify no such copying.

Class counsel repeat their groundless "estimate" of $25,000, not based on anything they expect to incur, but on "other cases" from the same district court, where conclusory assertions similarly carried the day. Again, appellants cited *appellate* authorities to the contrary, *e.g.*, *Tennille v. W. Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014); *Kitagawa v. Gaudet (In re MagSafe Apple Power Adapter Litig.)*, Nos. 12-15757, No. 12-15782, Apr 24, 2014), at \*3-\*4 (noting such costs "rarely exceed a few hundred dollars"); *Adsani v. Miller*, 139 F.3d 67, 76 (2d Cir. 1998), which class counsel's Answer disregards entirely. Class counsel make no effort (putting unsupported, vacuous bloviations aside) to contradict appellants' showing that they will have zero taxable costs if they prevail on appeal.

Class counsel thus seek to supplement their deficient motion *ex post facto* with naked speculation. For example, they again speculate they *might* incur fees for seeking *pro hac vice* status, even though their appellate counsel are members of this Court's bar. No one but Messrs. Clement and Rowen has appeared for the

7

class, and, with their merits brief due February 3, 2025, they identify no plans for anyone additional to participate in submitting it, still less 100 more lawyers at $199 apiece.

For the fourth time, class counsel rely on the conclusory, hearsay declaration of Scott Fenwick that their "administrative costs" will increase $825,000, with no explanation of why these appeals will cause an extra penny of added cost. Such "administrative costs" simply are not properly included in an appeal bond. *Tennille, supra*, 774 F.3d at 1254-5; *Sciaroni v. Consumer Plaintiffs (In re Target Corp. Customer Data Sec. Breach Litig.)*, 847 F.3d 608, 614-5 (8th Cir. 2017); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, 716 F.3d 1057, 1062 (8th Cir. 2013).

So they now seek to mend their hold[5], contending they will generate recoverable attorney fees by prevailing on appeal, citing *In re Cardizem CD*

---

[5] As *Spitzer v. Board of Trustees for Regina Public School Dist. No. 4 of Saskatchewan*, 267 F. 121 (6th Cir. 1920), quoting *Ohio & Miss. Ry. Co. v. McCarthy*, 96 U.S. 267, 268, 24 L. Ed. 693 (1877) holds:

> Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.

Accord: *Life Care Centers of America, Inc. v. Charles Town Assoc. L.P.*, 79 F.3d 496, 508 (6th Cir. 1996) (same).

*Antitrust Litig.*, 391 F.3d 812 (6th Cir.2004). But attorney fees are not "administrative costs" billed by Kroll (which has no counsel of record herein).

Class counsel erroneously invoke *Cardizem*[6]. They claim 42 Pa. C.S.A. §8313(a) allows an "owner" to recover reasonable attorney fees for destruction of agricultural crops. But the Master Complaint identified no crop damage (only damage to air, soil, and water—R. 31, PageID#.671-2, ¶¶20, 23), so the fact the Complaint cites it does not establish it applies. *In re Cardizem CD Antitrust Litigation*, 481 F.3d 355, 361-2 (6th Cir. 2004).

To like effect, class counsel argue the Master Complaint cites Ohio Rev. Code §§959.02 and 959.99 (B) allowing for attorney fees for malicious or willful killing of specified domestic animals. Again, for the Ohio class plaintiffs, there are no allegations of domestic animal deaths, still less any caused willfully or maliciously (R. 31, PageID#.668-71, ¶¶2-18), so these statutes also do not apply.

Finally, class counsel cite Ohio Rev. Code §2307.60(A), which allows recovery of attorney fees for those injured by a "criminal act". Although the statute is cited in ¶355 of the Master Complaint (R. 31, PageID#.746), no criminal act is alleged anywhere in the Complaint—the word "criminal" appears solely where the statute is partially quoted. So, again, this statute cannot serve to justify an attorney fee award to appellees in this matter.

---

[6] Their only tool being a hammer, class counsel perceive everything as a nail.

As for "inherent [judicial] power", class counsel concede (Answer, Dkt. 36, p. 19) this is limited to requiring a "cost bond", meaning taxable costs, which excludes both administrative costs and attorney fees. This brings us full circle to the fact class counsel have yet, despite four attempts, to identify a penny of such costs they expect to legitimately tax under either F.R.A.P. 7 or F.R.A.P. 39 or an *applicable* statute. *BDT Prods., Inc v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005). And justify they must, with more than *ipse dixit*. *Tennille, supra* ("Plaintiffs here made no effort to justify their $25,000 estimate."). As we have seen, no *applicable* statute allows for attorney fees, because in each case, the statutory requisites are entirely absent from the Complaint. Plaintiffs-appellees thus fail to identify any legitimately *taxable* costs.

**E. Irreparable injury**

Class counsel engage in circular reasoning—appellants will not be irreparably injured by the appeal bond requirement unless their appeals have merit. As earlier noted, appellants' merits briefs currently stand unchallenged and unrebutted. This Court cannot properly dismiss the appeals for failure to post appeal bond unless it reviews those briefs and concludes the appeals lack merit. F.R.A.P. 3(2); *Tennille, supra* at 1253. The bond order herein is invalid in both obstructive intent and evidentiary justification.

**F. No supersedeas being requested, class counsel can't be "substantially injured"**

Continuing their pattern of *ipse dixit* and "false flag" discussion of stay pending appeal, class counsel assert they have "concerns" about being able to collect taxable costs if they prevail. But after four tries they have identified no costs they can properly tax (but such costs "rarely exceed a few hundred dollars." *Kitagawa, supra*). Class counsel can easily collect such amounts out of appellants' Settlement shares—appellants had to "opt in" to challenge the settlement, and their shares remain unpaid. See *Chesbrough v Woodworth*, 195 F 875 (6th Cir. 1912) ("[U]nder the discretion given to this court by rule 31 * * *, one-third of the otherwise taxable costs, of transcript in this court, will be deducted.").

## RELIEF REQUESTED

The appeal bond ordered by the district court should be entirely eliminated, or reduced to at most a few hundred dollars in *reasonably* estimated taxable costs.

Respectfully submitted,

s/ David M. Graham
Attorney for Appellants
David M. Graham, Esq.
David M. Graham Insurance Lawyers, P.A.
Florida Bar No. 95588
Appearing *pro hac vice*
210 E. Forsyth St.
Jacksonville, FL 32202
(904) 567-6529
Primary e-mail: dgraham@dginslaw.com
Secondary e-mail: EastPalestine@dginslaw.com

**CERTIFICATE OF COMPLIANCE per FRAP 32(g)(1) and 6 Cir. R. 32(a)**

David M. Graham, appearing *pro hac vice*, certifies, under FRAP 27(d)(2)(A) that this Brief contains 2,571 words, inclusive of headings, footnotes, citations and quotations, as counted by Microsoft Word 2010, the word processing software used to create this Brief. The typeface is Times New Roman 14 point, a serif font in conformity with FRAP 32(a)(6).

By: /s/ David M. Graham  Dated: January 31, 2025
David M. Graham, *pro hac vice*
Attorney for Appellants