# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

IN RE: EAST PALESTINE TRAIN DERAILMENT

REV. JOSEPH SHEELY, ZSUZSA TROYAN, TAMARA FREEZE,
SHARON LYNCH, CARLY TUNNO
*Interested Parties-Appellants*,

HAROLD R. FEEZLE, SUSAN E. SCHEUFELE, DAVID J. SCHEUFELE, ROLLERENA AUTO
SALES, LLC, MARILYN FIGLEY, ROSEMARY MOZUCH, CHARLES MOZUCH, JON LUKE
AFFELTRANGER, EDWARD E. BARNHOUSE, ON BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED; LAURA MANN, *ET AL.*
*Plaintiffs-Appellees*,

*v.*

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION,
*Defendants-Appellees*.

On Appeal from the United States District Court for the Northern District of Ohio,
Case No. 4:23-cv-00242-BYP (Hon. Benita Y. Pearson)

## RESPONSE BRIEF FOR DEFENDANTS-APPELLEES
## NORFOLK SOUTHERN RAILWAY COMPANY,
## NORFOLK SOUTHERN CORPORATION

ALBINAS PRIZGINTAS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
albinas.prizgintas@wilmerhale.com

ALAN SCHOENFELD
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

February 3, 2025

**DISCLOSURE OF CORPORATE AFFILIATIONS AND
FINANCIAL INTEREST**

Norfolk Southern Railway Company is a wholly-owned subsidiary of Norfolk Southern Corporation. Norfolk Southern Corporation has no parent company and no publicly held corporation owns 10% or more of its stock.

There is no publicly owned corporation that is not a party to this appeal that has a financial interest in the outcome.

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS AND
     FINANCIAL INTEREST ..................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .................................................................................1

STATEMENT OF ISSUE .....................................................................4

STATEMENT OF THE CASE ..............................................................4

    A.    The Parties Engaged In Aggressive Litigation ....................4

    B.    The Parties Engaged In Hard-Fought Settlement
         Negotiations ..........................................................................7

    C.    Norfolk Southern's Ongoing Litigation ..............................9

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW .................................................................10

ARGUMENT ......................................................................................11

I.    PLAINTIFFS WOULD HAVE FACED SIGNIFICANT
    CHALLENGES ESTABLISHING DAMAGES IN EXCESS OF THE
    RECOVERY OBTAINED THROUGH SETTLEMENT .............................11

    A.    Significant Evidence Demonstrates Modest
         Environmental Impact ........................................................11

    B.    Norfolk Southern Has Addressed The Modest
         Environmental Impacts Through Payments And Efforts
         Far Above And Beyond The Class Settlement ...................14

II.    AS PLAINTIFFS THEMSELVES RECOGNIZED IN AGREEING TO THE
    SETTLEMENT, PLAINTIFFS' CLAIMS FACED ADDITIONAL SERIOUS
    LEGAL AND FACTUAL CHALLENGES .............................................15

CONCLUSION ...................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Adrian & Blissfield Railroad Company v. Village of Blissfield*,
　550 F.3d 533 (6th Cir. 2008) ........................................................................15

*Amchem Products, Inc. v. Windsor*,
　521 U.S. 591 (1997)......................................................................................18

*Fidel v. Farley*,
　534 F.3d 508 (6th Cir. 2008) ........................................................................10

*IBEW Local 697 Pension Fund v. International Game Technology, Inc.*,
　2012 WL 5199742 (D. Nev. Oct. 19, 2012)...................................................7

*In re Bear Stearns Companies Securities, Derivative, & ERISA
Litigation*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..........................................7

*In re Behr Dayton Thermal Products Litigation*,
　2022 WL 3328407 (S.D. Ohio Aug. 11, 2022) ............................................17

*In re Crocs Inc. Securities Litigation*,
　306 F.R.D. 672 (D. Colo. 2014) .....................................................................7

*In re E.I. DuPont de Nemours & Company C-8 Personal Injury
Litigation*, 2022 WL 4149090 (6th Cir.Sept. 9, 2022)....................................9

*In re National Prescription Opiate Litigation*,
　976 F.3d 664 (6th Cir. 2020) ........................................................................18

*Indiana Harbor Belt Railroad Company v. American Cyanamid
Company*, 916 F.2d 1174 (7th Cir. 1990).......................................................16

*International Union, United Automobile, Aerospace, & Agricultural
Implement Workers of America v. General Motors Corporation*,
　497 F.3d 615 (6th Cir. 2007) ...................................................................10, 11

*Johnson v. CSX Transportation, Inc.*,
　2008 WL 4427211 (W.D. Ky. Sept. 25, 2008).........................................16, 17

*Nickels v. Grand Trunk Western Railroad, Inc.*,
    560 F.3d 426 (6th Cir. 2009) ...................................................................15, 16

*Roth v. Norfalco LLC*,
    651 F.3d 367 (3d Cir. 2011) ..........................................................................16

*Voulgaris v. Array Biopharma Inc.*,
    2021 WL 6331178 (D. Colo. Dec. 3, 2021) ....................................................7

## DOCKETED CASES

*Ohio v. Norfolk Sourthern Corporation*, 4:23c-v-00517 (N.D. Ohio) ..........12, 13, 14

## STATUTES AND RULES

Fed. R. Civ. P. 23 ..............................................................................................9, 10

## OTHER AUTHORITIES

2 *Newberg & Rubenstein on Class Actions* (6th ed. 2024)......................................18

Norfolk Southern's $600 million class action settlement underscores the Company's commitment to making things right after the February 2023 derailment—providing significant and timely monetary relief to individuals and businesses in and around East Palestine, Ohio.  It was reached through extensive litigation, with zealous advocacy on both sides, and through the expert assistance of one of the nation's leading mediators.  Settlement classmembers overwhelmingly approved it, with extraordinary participation rates.  The district court recognized all of this—carefully reviewing the record and approving the settlement as fair, adequate, and reasonable.  That considered judgment was well within the district court's discretion and should be affirmed.

The parties first attempted to settle the case eight months after litigation began.  That mediation was unsuccessful, notwithstanding the mediation efforts of a former United States district judge who has presided over many high-profile mediations, including some arising from industrial accidents and environmental incidents.  The parties tried again four months later, after millions of pages of documents were produced and nearly 100 depositions were taken.  After another month of extensive negotiations, the mediator issued a recommendation; one

---

[1] Because the briefs for the objectors are substantially similar, and Norfolk Southern's position is identical, in both this and the related appeal, Case Nos. 24-3852 and 24-3880, Norfolk Southern files the same brief in both cases.

month after that, the parties reached an agreement in principle.  The settlement includes significant monetary relief to classmembers—including direct payments of approximately $70,000 to East Palestine households, and those classmembers within 10 miles of the derailment may voluntarily elect—and *overwhelmingly* have elected—to receive more compensation through personal injury payments that average about $25,000 per person within East Palestine.

The class action settlement stands on its own, but it bears emphasis that it is just a part of the broader suite of compensation payments and remedies Norfolk Southern has made available to those in and around East Palestine.  For example, as part of a separate settlement with the United States, Norfolk Southern has agreed to fund a 20-year Community Health Program, which includes medical monitoring and mental health services for residents of East Palestine and neighboring communities.  And on top of both the $600 million settlement at issue here and the separate settlement with the United States, Norfolk Southern has committed over $100 million more in direct, long-term community funding, including to protect area drinking water with state-of-the-art technology and funding local agencies and non-profits, a community center focused on mental health, and a major renovation of the East Palestine City Park.

The objectors who challenge the class action settlement here represent a fraction of one percent of the class, and their dissatisfaction stands in stark contrast

to the settlement's extraordinary participation rates. In service of their narrow and unsupported objections, they gravely misapprehend the risks and delay that classmembers faced in litigating this case to resolution, instead of resolving it expeditiously on favorable terms. The district court acted well within its broad discretion to approve the settlement. Norfolk Southern's commitment to making things right after the derailment should not be mistaken as a sign that it was averse to litigating the case—it was fully prepared to defend its case as necessary, including through appeals at class certification and after any trial on the merits. The compromise reflected in the mediator's recommendation and embodied in the settlement fairly accounted for the significant risks faced by both Plaintiffs (risks that the objectors ignore or understate) and Norfolk Southern (the only risks on which the objectors focus).

Norfolk Southern submits this brief to aid the Court in considering the objections, specifically as they relate to—and gravely understate—the litigation risks faced by Plaintiffs.

The Court should affirm approval of the settlement.

## STATEMENT OF ISSUE

Whether the district court acted within its discretion when it determined that the settlement agreement between Plaintiffs and Norfolk Southern was fair, adequate, and reasonable.[2]

## STATEMENT OF THE CASE

### A.     The Parties Engaged In Aggressive Litigation

Over 30 individual and putative class actions were filed in the wake of the derailment, on behalf of individuals and businesses within various radii of the derailment.  On April 5, 2023, the district court consolidated those cases and appointed Interim Class Counsel and Co-Lead Counsel, as well as a leadership structure with experienced attorneys and firms serving as an Executive Committee, a Plaintiffs' Steering Committee, Community Liaison Counsel, and several subcommittees (collectively, "Class Counsel").  Consolidation Order, RE 28, Page ID # 569-573.  With that structure in place, Class Counsel filed a 92-page consolidated class action complaint, Master Consolidated Complaint, RE 31, and then amended their Complaint in an even more expansive, 105-page First Amended Master Consolidated Class Action Complaint ("Amended Compl."), RE 138.

---

[2] Norfolk Southern agrees with Plaintiffs that notice to the class was sufficient and that the request for re-assignment is meritless, and so does not address those issues. Norfolk Southern takes no position on the timing or amount of Class Counsel's fees.

Norfolk Southern moved to dismiss the case in its entirety on multiple grounds, including on preemption grounds endorsed by this Court. As Plaintiffs pointed out below, the "risk posed by a negative ruling on preemption" was so "substantial" that it prompted Plaintiffs to hire "one of the foremost appellate attorneys in the United States[] to consult on drafting Plaintiffs' response" to those arguments. Plaintiffs' Br. for Final Settlement Approval ("Plaintiffs' Settlement Br."), RE 518-1, Page ID # 10907.

Ultimately, the district court denied Norfolk Southern's motion to dismiss except as to Plaintiffs' standalone medical monitoring claim. Order on Motion to Dismiss, RE 428, Page ID # 5578. But the district court did not foreclose the possibility of a future preemption decision favorable to Norfolk Southern, observing instead that whether Norfolk Southern in fact violated a federal regulation—one of the linchpins of the preemption inquiry—was "a factual inquiry … not appropriate for a motion to dismiss." *Id.* Page ID # 5552. More broadly, the court repeatedly cabined its reasoning to "the pleading stage," *id.* at Page ID # 5556, 5570, 5573 n.9, leaving open the possibility that further factual development could result in a different outcome.

The parties engaged in extensive discovery, including production and review of millions of pages of documentary evidence, thorough development of expert witnesses and reports, and significant and ongoing environmental testing.

Plaintiffs' Settlement Br., RE 518-1, Page ID # 10908.  Norfolk Southern and Plaintiffs collectively took, defended, or participated in nearly 100 depositions, which concluded by March 1, 2024.  *Id.* Page ID # 10908-10909.  Notwithstanding the relatively short discovery period, the parties developed a mountainous factual record setting up substantial factual disputes.

Meanwhile, Norfolk Southern continued remediation efforts.  For instance, through its Family Assistance Center, Norfolk Southern provided direct and timely compensation for evacuation and relocation costs, including for lodging, food, clothing, gas, childcare, laundry, pet care, and more.  The Center also provided wage loss payments to those displaced from work.  Norfolk Southern also committed tens of millions of dollars to address allegedly impacted infrastructure in East Palestine, including to overhaul the East Palestine municipal drinking water system to ensure safe filtration of any lingering contaminants.  Each of these remediation efforts would have posed a substantial risk to the scope of Plaintiffs' recovery—materially undercutting the types and quantum of damages Plaintiffs could pursue in litigation—which would have been extensively litigated even if Plaintiffs were able to overcome significant obstacles to prevailing on the merits of their claims.

## B. The Parties Engaged In Hard-Fought Settlement Negotiations

In October 2023, the parties engaged in a two-day mediation overseen by the highly experienced and respected mediator retired United States District Judge Layn R. Phillips.[3] The mediation was unsuccessful. But negotiation between the parties continued, while they also proceeded with round-the-clock litigation— sometimes double or triple-tracking depositions on a given day—with negotiation communications increasing in frequency by December 2023. Plaintiffs' Settlement Br., RE 518-1, Page ID # 10910. The parties returned to another full-day mediation session on February 19, 2024. *Id.* The parties again submitted

---

[3] Courts have repeatedly relied on Judge Phillips's involvement as a factor weighing in favor of approving settlement. *See Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021) ("Judge Phillips' involvement in the mediation process, the length of the mediation (eleven hours), and the extensive briefing and discovery that occurred in connection with the mediation, demonstrate fair, honest, and arm's length negotiations in connection with the Settlement."), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *In re Crocs Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases"); *IBEW Local 697 Pension Fund v. International Game Tech.*, Inc., 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").

extensive confidential briefing in advance of the mediation, with an even more developed factual record through discovery and expert development. *Id.* The parties, again, did not come to agreement.

Negotiations continued, and on March 6, 2024, approximately five months after the first mediation session, Judge Phillips presented a settlement recommendation to the parties. Plaintiffs' Settlement Br., RE 518-1, Page ID # 10911. After thorough consideration over the course of another full month, the parties accepted Judge Phillips's recommendation, announcing an agreement in principle on April 9, 2024. Notice of Agreement in Principle, RE 445. As Judge Phillips subsequently explained, "the Settlement represents an excellent outcome obtained after aggressive litigation and arms' length negotiation," and "it was in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial and following appeals." Judge Phillips Decl., RE 518-5, Page ID # 11089 ¶ 18. Moreover, Judge Phillips continued, the "Settlement will provide substantial and expeditious relief for community members affected by the train derailment." *Id.*

In settling when the parties did, Plaintiffs avoided material risk to obtaining any classwide judgment that would have compensated classmembers for their injuries, and also considerably shortened the timetable on which classmembers would be compensated. Among other things, Plaintiffs did not have to litigate

class certification, including as to the manageability of any class trial, nor a Rule 23(f) appeal. This Court has previously (and recently) granted Rule 23(f) certification in expansive putative class actions, *see In re E.I. DuPont de Nemours & Co. C-8 Personal Injury Litig.*, 2022 WL 4149090, at *3-10 (6th Cir. Sept. 9, 2022), which can significantly extend the timing of the underlying litigation pending the outcome of any such appeal. Opting to litigate the case through class certification thus not only presented uncertainty in the outcome but also would have delayed compensation to classmembers—even assuming Plaintiffs could obtain certification for trial, defend it on appeal, and then win the case on the merits (avoiding decertification along the way)—for months, and potentially years.

## C.    Norfolk Southern's Ongoing Litigation

Norfolk Southern continues litigating its third-party claims against the owner of the railcar that caused the derailment and the shipper that provided incorrect information about its chemicals, which led to the vent-and-burn. Norfolk Southern aims to ensure they are held responsible for their fair share of the settlement. Summary judgment briefing has concluded, and trial is scheduled for March 31, 2025. Trial Order, RE 392, Page ID # 5120.

## SUMMARY OF THE ARGUMENT

No litigation is without risks, especially in a case involving a high-profile incident like the derailment at issue here. The settlement was thus in Norfolk

Southern's best interests, including for many of the reasons the objectors cite. But the objectors ignore that Plaintiffs also faced significant risks from continued litigation, both factual and legal. On the facts, testing showed the environmental impact from the derailment was substantially more limited than Plaintiffs alleged, and Norfolk Southern engaged in extensive remediation efforts external to this litigation that—as Norfolk Southern was fully prepared to litigate—remedied much purported damage. On the law, Plaintiffs faced the risk of losing at summary judgment or on appeal, either because their claims were preempted by federal law or precedent foreclosed their theories of liability. And, had litigation continued, it would have included litigation over class certification, including a potential interlocutory appeal under Rule 23(f) that could have frustrated Plaintiffs' ability to obtain classwide relief and significantly delayed resolution of the case. Especially given these competing risks, the district court acted well within its discretion to approve the settlement.

## STANDARD OF REVIEW

This Court "review[s] a district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). In determining whether to approve a settlement, courts "must consider … the federal policy favoring settlement of class actions." *International*

*Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

## ARGUMENT

The settlement should be approved and the objectors' attacks on the district court are meritless. Norfolk Southern here highlights the significant risks Plaintiffs faced in continuing litigation, but it is the risks faced by both sides—of unfavorable outcomes or significant delays—that confirm why the settlement was in the interest of all parties.

## I. PLAINTIFFS WOULD HAVE FACED SIGNIFICANT CHALLENGES ESTABLISHING DAMAGES IN EXCESS OF THE RECOVERY OBTAINED THROUGH SETTLEMENT

The objectors largely focus on purportedly competing evidence over the extent of environmental harm. Whatever the merits of the environmental evidence they identify—which Norfolk Southern contests—there is a mountain of competing evidence that the objectors simply ignore.

### A. Significant Evidence Demonstrates Modest Environmental Impact

Environmental testing conducted by the U.S. EPA, the Ohio EPA, the Pennsylvania Department of Environmental Protection, and Norfolk Southern found that the derailment resulted in modest environmental impact, which was fully and fairly compensated by the $600 million settlement, particularly when added to the other remedial efforts and payments Norfolk Southern made wholly

outside this litigation. Indeed, Norfolk Southern was fully prepared to litigate the scope of Plaintiffs' injuries and damages, and Plaintiffs faced a real risk that a jury could award vastly less than they obtained in this settlement.

Much of this evidence was set forth in a declaration—filed in Norfolk Southern's parallel litigation that culminated in a consent decree with the United States currently pending before another federal district court—by Ralph Dollhopf, a U.S. EPA employee in the Superfund and Emergency Management Division. Declaration of Ralph Dollhopf ¶¶ 1-3, *Ohio v. Norfolk S. Corp.*, No. 4:23-cv-00517 (N.D. Ohio Oct. 10, 2024), ECF No. 162-2 ("Dollhopf Decl."). This declaration is not the sum total of the evidence either side was prepared to put on at trial. But it is indicative of the difficulties Plaintiffs would have faced in proving their damages, and the risk of a recovery far below what they received through this settlement. This official government statement from a neutral source underscores that the $600 million settlement, at minimum, fairly compensates Plaintiffs for purported harms.

*Air Testing.* Air testing by the U.S. EPA immediately after the derailment found no contaminants of concern outside the immediate vicinity of the vent-and-burn, and later testing following the vent-and-burn only detected contamination immediately above Sulphur Run, a stream adjacent to the derailment site. Dollhopf Decl., ECF No. 162-2, Page ID # 2492-2493 ¶¶ 41-42.

***Soil Testing.***  EPA testing showed that soil contamination was limited to the area immediately surrounding the derailment site.  Dollhopf Decl., ECF No. 162-2, Page ID # 2490-2491 ¶¶ 32-33.  By October 2024, Norfolk Southern had completed the vast majority of the soil removal work needed at the site, in coordination with the U.S. EPA.  *Id.* Page ID # 2488-2489 ¶ 25.

***Groundwater and drinking water.***  The EPA found no contaminants of concern related to the derailment in East Palestine's water supply.  Dollhopf Decl., ECF No. 162-2, Page ID # 2492-2493 ¶ 37.  And under the consent decree with the United States, Norfolk Southern will continue to monitor water quality in the areas covered by the well-sampling programs for an additional 10 years.  *Id.* Page ID # 2493 ¶ 38.

***Surface water.***  Certain contaminants did reach Sulphur Run.  In coordination with the U.S. and Ohio EPAs, Norfolk Southern engaged in testing and extensive cleanup efforts, which the U.S. EPA found were effective.  Dollhopf Decl., ECF No. 162-2, Page ID # 2496-2497 ¶¶ 44, 49.  Moreover, Norfolk Southern will continue "to conduct surface water, groundwater, and drinking water monitoring for an additional 10 years after removal actions are complete to provide additional assurance to the community, and, in the unlikely event additional derailment contamination is found, Norfolk Southern will be required to address it."  *Id.* Page ID # 2499 ¶ 54.

**B.** **Norfolk Southern Has Addressed The Modest Environmental Impacts Through Payments And Efforts Far Above And Beyond The Class Settlement**

The consent decree with the United States also requires Norfolk Southern to provide, among other things:

- A DOJ-estimated $235 million for cleanup costs, including removal of over 200,000 tons of soil and 70 million gallons of wastewater;

- $25 million for a 20-year program that includes medical monitoring and mental health services for residents and first responders;

- $15 million for long-term monitoring of groundwater and surface water for a period of 10 years;

- $15 million for a private drinking water monitoring fund that will continue the existing monitoring program for 10 years;

- $6 million for cleanup and remediation projects in Leslie Run and Sulphur Run; and

- Significant projects to enhance rail safety.

Consent Decree, *Ohio v. Norfolk S. Corp.*, 4:23-cv-00517 (N.D. Ohio May 23, 2024), ECF No. 138-1, Page ID # 2252-2253, 2255, 2278 ¶ 43, 2279-2280 ¶¶ 47-48, 2285-2291 ¶¶ 56-71, 2300 ¶ 91. And, as noted above, *supra* 6, Norfolk Southern has made extensive additional commitments to the East Palestine community designed to protect it against any potential latent harms from the derailment.

Plaintiffs indisputably faced a risk that they would not be able to prove that they suffered anywhere near the extent of harm originally alleged, and far less than

Plaintiffs recovered through this $600 million settlement. As the objectors point out, of course, Plaintiffs could have made arguments to the contrary. If there were no potential contrary arguments, Norfolk Southern would not have settled. But at a minimum this evidence confirms that the district court did not abuse its discretion in approving this $600 million settlement.

## II. AS PLAINTIFFS THEMSELVES RECOGNIZED IN AGREEING TO THE SETTLEMENT, PLAINTIFFS' CLAIMS FACED ADDITIONAL SERIOUS LEGAL AND FACTUAL CHALLENGES

Norfolk Southern also had strong arguments that Plaintiffs' claims were deficient as a matter of law. If Plaintiffs survived summary judgment, and if they prevailed at trial, there remained a risk that their recovery could be invalidated on appeal. Of course, Norfolk Southern cannot be certain that its arguments would have prevailed—again, that is why it agrees that the settlement was also in its best interest. But that uncertainty cuts both ways, and the settlement mitigated grave risks to Plaintiffs' ability to recover under the law.

Norfolk Southern had a strong argument that many of Plaintiffs' claims were preempted by federal law. The Interstate Commerce Commission Termination Act preempts state laws that "'may reasonably be said to have the effect of managing or governing rail transportation.'" *Adrian & Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008). The Federal Railroad Safety Act and its regulations preempt claims concerning railroad safety. *See Nickels v. Grand*

*Trunk W. R.R., Inc.*, 560 F.3d 426, 430-431 (6th Cir. 2009). And the Hazardous Materials Transportation Act preempts claims "that relate to, or are 'about'" transportation of hazardous materials. *See Roth v. Norfalco, LLC*, 651 F.3d 367, 374-375 (3d Cir. 2011).

Whether and when these federal statutes preempt state law tort claims are complex questions. But Plaintiffs would have faced a substantial challenge to show that Norfolk Southern violated a duty imposed by federal statute or regulation, or an internal rule adopted pursuant to such a regulation. This would have presented a particular problem with respect to Norfolk Southern's wayside detection system, which violated no federal regulation and was consistent with industry standards. Other of Plaintiffs' claims faced a similar risk of preemption, which might not have been fully realized until the resolution of an eventual appeal. *See supra* 5.

Plaintiffs' assertion of strict liability also faced significant legal obstacles. *First*, under the common-carrier exception, Norfolk Southern cannot be held strictly liable because it is legally required to accept hazardous materials like those at issue here. *See, e.g.*, *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1180 (7th Cir. 1990). And some courts have held that exception further precludes strict liability for conduct incident to transportation of hazardous materials, including clean-up efforts following a train derailment. *See Johnson v.*

*CSX Transp., Inc.*, 2008 WL 4427211, at *3 (W.D. Ky. Sept. 25, 2008). *Second*,

Plaintiffs would have struggled to demonstrate that Norfolk Southern's actions

constituted "an abnormally dangerous activity"—a "'quite limited'" category, *In re*

*Behr Dayton Thermal Prods. Litig.*, 2022 WL 3328407, at *10 (S.D. Ohio Aug. 11,

2022), that Norfolk Southern contends does not encompass transport of substances

like vinyl chloride, much less efforts to *prevent* catastrophic explosions.

 Plaintiffs also could not have established the right to any punitive damages,

despite objectors' statements to the contrary. Objectors tout the issue repeatedly,

and fault class counsel for the asserted "failure to pursue punitive damages."

Appellant Sheely Br. 45; Appellant Troyan Br. 47. But even objectors concede

that such relief would require a showing of "reckless" or "wanton" behavior akin

to "actual malice." Appellant Sheely Br. 17; Appellant Troyan Br. 19. Objectors

identify no actual evidence in support of such a finding here, and there is none.

Contrary assertions rely on narratives long since debunked by the evidence

produced in the parties' extensive discovery efforts. For example, Plaintiffs

alleged that Norfolk Southern "[f]ailed to properly inspect [its] trains and railcars."

Amended Compl., RE 138, Page ID # 1830 ¶ 279(a). But in fact, the record shows

that Norfolk Southern completed all required inspections, and that the industry

standard predeparture inspections undertaken here did not reveal (and could not

have revealed) the latent defect in the roller bearing that caused the derailment. As

another example, Plaintiffs premised their request for punitive damages based on the decision to conduct the vent-and-burn.  *See id.* Page ID # 1830 ¶ 278(gg), 1833 ¶ 279(gg), 1836 ¶ 290.  But the evidence makes clear that Norfolk Southern appropriately recommended the vent-and-burn to Unified Command based on the facts Norfolk Southern knew at the time—in particular, the Safety Data Sheet provided by the shipper of the vinyl chloride at issue, which warned of polymerization and potentially catastrophic explosions in precisely these circumstances.  Those actions do not amount to negligence on Norfolk Southern's part, much less "actual malice."

Finally, had litigation continued, the parties would have continued to litigate issues related to class certification.  That would have included litigation under the more stringent inquiry into the manageability of trial, rather than settlement, classes.  *See* 2 *Newberg & Rubenstein on Class Actions* § 4:63 (6th ed. 2024) ("Courts … regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").  Thus, because the district court here was "[c]onfronted with a request for a settlement-only class certification," it "need not [have] inquire[d] whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."  *In re National Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Had the

district court been required to consider these trial-manageability concerns, it would have posed additional risk to Plaintiffs obtaining classwide relief and to the time before classmembers received compensation. As noted above, the prospect of this litigation presented a risk of months or years of delay, even assuming Plaintiffs could obtain certification, avoid decertification throughout the litigation (including on an interlocutory appeal), and ultimately prevail on the merits. *Supra* 9-10.

These arguments do not cover the universe of legal defenses Norfolk Southern was prepared to litigate, but present illustrative examples of the substantial risks Plaintiffs faced absent this fair, reasonable, and adequate settlement.

## CONCLUSION

All litigation presents risk—particularly here, where a highly publicized emergency situation undeniably affected the surrounding community, and where speculation and misinformation exists to this day. Given the significant risk exposure, complicated legal issues, vigorously contested factual theories, and costs posed by years-long delays presented by an eventual trial and appeal, the settlement was in both Norfolk Southern's and Plaintiffs' best interests. Because the settlement fairly, reasonably, and adequately accounts for the competing risks, approval of it should be affirmed.

Respectfully submitted,

/s/ *Alan Schoenfeld*

ALBINAS PRIZGINTAS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
albinas.prizgintas@wilmerhale.com

ALAN SCHOENFELD
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com

February 3, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Circuit Rule 32(b)(1), the brief contains 4,205 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Alan Schoenfeld*
ALAN SCHOENFELD

February 3, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Alan Schoenfeld*
ALAN SCHOENFELD

# ADDENDUM

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Date Filed | Page ID Range | Description |
|---|---|---|---|
| 28 | 04/05/2023 | 549-571 | Consolidation Order |
| 31 | 05/04/2023 | 667-760 | Master Consolidated Complaint |
| 138 | 08/14/2023 | 1771-1876 | First Amended Master Consolidated Class Action Complaint |
| 392 | 02/12/2024 | 5120-5130 | Trial Order |
| 445 | 04/09/2024 | 5822-5825 | Notice of Agreement in Principle |
| 428 | 03/13/2024 | 5541-5578 | Order on Motion to Dismiss |
| 518-1 | 09/06/2024 | 10899-10941 | Plaintiffs' Brief for Final Settlement Approval |
| 518-5 | 09/06/2024 | 11085-11089 | Declaration of Judge Layn R. Phillips in Support of Motion for Final Approval of Class Action Settlement (dated Aug. 28, 2024) |
| 557 | 09/27/2024 | 14580-14586 | Judgment on Final Approval of Settlement |
| 558 | 09/27/2024 | 14587 | Sheely Notice of Appeal |
| 570 | 10/08/2024 | 14768 | Troyan Notice of Appeal |