# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

―――――――――

IN RE: EAST PALESTINE TRAIN DERAILMENT

―――――――――

REV. JOSEPH SHEELY, ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, CARLY TUNNO

*Interested Parties-Appellants,*

HAROLD R. FEEZLE, SUSAN E. SCHEUFELE, DAVID J. SCHEUFELE, ROLLERENA AUTO SALES, LLC, ROSEMARY MOZUCH, CHARLES MOZUCH, JON LUKE AFFELTRANGER, MARILYN FIGLEY, EDWARD E. BARNHOUSE, on behalf of themselves and all others similarly situated; LAURA MANN

*Plaintiffs-Appellees,*

v.

NORFOLK SOUTHERN RAILWAY COMPANY; NORFOLK SOUTHERN CORPORATION,

*Defendants-Appellees.*

―――――――――

On Appeal from the United States District Court for the Northern District of Ohio, No. 23-cv-00242

―――――――――

## RESPONSE BRIEF FOR PLAINTIFFS-APPELLEES

―――――――――

M. ELIZABETH GRAHAM
ADAM J. GOMEZ
GRANT & EISENHOFER P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801

PAUL D. CLEMENT
 *Counsel of Record*
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellees*
*(additional counsel listed on inside cover)*

February 3, 2025

MARK CHALOS
LIEFF CABRASER HEIMANN
   & BERNSTEIN LLP
222 Second Avenue S., Suite 1640
Nashville, TN 37201

JAYNE CONROY
SIMMONS HANLY CONROY LLP
112 Madison Avenue, 7th Floor
New York, NY 10016

JO ANNA POLLOCK
SIMMONS HANLY CONROY LLP
One Court Street
Alton, IL 62002

SETH A. KATZ
BURG SIMPSON ELDREDGE
   HERSH & JARDINE, P.C.
40 Inverness Drive E.
Englewood, CO 80112

MELANIE S. BAILEY
BURG SIMPSON ELDREDGE
   HERSH & JARDINE, P.C.
201 E. Fifth Street, Suite 1340
Cincinnati, OH 45202

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Rollerena Auto Sales, LLC, DalQan Holdings, LLC, Valley View MPH LLC, and Competition & Luxury Vehicle Club of Darlington, LLC individually certify that they do not have a parent corporation and that no publicly held corporation owns more than ten percent of their respective stock.[1]

---

[1] Only Rollerena Auto Sales LLC was named as a Plaintiff-Appellee in these appeals. To ensure compliance with FRAP 26.1(a), Plaintiff-Appellees include the other businesses in the corporate disclosure statement that were class representatives in the district court proceedings.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES.................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT....................................... viii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ........................................................... 3

STATEMENT OF THE ISSUES .............................................................. 3

STATEMENT OF THE CASE.................................................................. 4

    A.    Legal Background ................................................................ 4

    B.    Factual and Procedural Background ..................................... 7

    C.    The Settlement.................................................................. 14

SUMMARY OF ARGUMENT................................................................. 18

STANDARD OF REVIEW ..................................................................... 22

ARGUMENT ..................................................................................... 23

I.    The District Court Acted Within Its Broad Discretion In Approving The Settlement .......................................................................... 23

    A.    Class Counsel and Class Representatives Adequately Represented the Class........................................................ 24

    B.    The Settlement Was Reached Through Arms-Length Negotiations, and There Was No Collusion ....................... 30

    C.    The Settlement Relief Is Adequate..................................... 34

    D.    Class Members Were Treated Equitably Relative to One Another ........................................................................... 41

    E.    The District Court Properly Assessed Counsels' Request for Costs and Fees ........................................................... 43

II.    The Opt-Out Period And Notice Were Sufficient ......................................... 48

    A.    The District Court Did Not Abuse Its Discretion in Denying a
       Motion for Enlargement of Time to Opt Out ..................................... 48

    B.    The Notice Satisfied Rule 23(c) and Due Process ............................ 51

III.    There Is No Basis For Reassignment ............................................................ 55

CONCLUSION ..................................................................................................... 57

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)......................................................................4

*Armco, Inc. v. United Steelworkers of Am.,*
  280 F.3d 669 (6th Cir. 2002)................................................ 23, 56

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  43 F.3d 1054 (6th Cir. 1995)........................................................47

*Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan*
  *v. Grandview Raceway,*
  46 F.3d 1392 (6th Cir. 1995)........................................................33

*Chieftain Royalty Co. v. XTO Energy Inc.,*
  2018 WL 2296588 (E.D. Okla. Mar. 27, 2018)............................27

*Com. Benefits Grp., Inc. v. McKesson Corp.,*
  326 F.App'x 369 (6th Cir. 2009)..................................................23

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008)................................................ 22, 23

*Franks v. Kroger Co.,*
  649 F.2d 1216 (6th Cir. 1981)......................................................43

*Gascho v. Glob. Fitness Holdings, LLC,*
  2014 WL 1350509 (S.D. Ohio April 4, 2014) ......................... 44, 45

*Gascho v. Glob. Fitness Holdings, LLC,*
  2014 WL 3543819 (S.D. Ohio July 16, 2014)................................45

*Gascho v. Glob. Fitness Holdings, LLC,*
  822 F.3d 269 (6th Cir. 2016)........................................... 22, 45, 46

*Granada Invs., Inc. v. DWG Corp.,*
  962 F.2d 1203 (6th Cir. 1992)........................................................6

*Grunin v. IHOP,*
  513 F.2d 114 (8th Cir. 1975)........................................................48

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) ................................................................42

*Hirsch v. CSX Transp., Inc.*,
  656 F.3d 359 (6th Cir. 2011) ...............................................................38

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1996) .................................................................23

*In re Cardinal Health Inc. Sec. Litigs.*,
  528 F.Supp.2d 752 (S.D. Ohio 2007) ..................................................46

*In re Flint Water Cases*,
  63 F.4th 486 (6th Cir. 2023) ......................................................... 28, 36

*In re Syngenta AG MIR 162 Corn Litig.*,
  357 F.Supp.3d 1094 (D. Kan. 2018) ....................................................27

*JGR, Inc. v. Thomasville Furniture Indus., Inc.*,
  550 F.3d 529 (6th Cir. 2008) ...............................................................44

*Kuhn v. Washtenaw Cnty.*,
  709 F.3d 612 (6th Cir. 2013) ...............................................................51

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ...................................................................6

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ...............................................................31

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ...................................................................... 52, 53

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.*
  *v. Anderson*,
  390 U.S. 414 (1968) .............................................................................39

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) .............................................................46

*Robinson v. Shelby Cnty. Bd. of Educ.*,
  566 F.3d 642 (6th Cir. 2009) ........................................... 5, 7, 22, 37

*Sekhar v. United States*,
570 U.S. 729 (2013) ........................................................... 32

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F.3d 299 (6th Cir. 2016) ............................................ 38

*UAW v. Gen. Motors. Corp.*,
497 F.3d 615 (6th Cir. 2007) ................................... *passim*

*United States v. Ellison*,
462 F.3d 557 (6th Cir. 2006) .............................. 32, 42, 52

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) ..................................... 52, 53

*Youn v. Track, Inc.*,
324 F.3d 409 (6th Cir. 2003) ..................................... 23, 57

**Statute and Rules**

28 U.S.C. §144 ............................................................... 57

Fed. R. App. P. 3 ............................................................ 44

Fed. R. Civ. P. 23 .................................................. *passim*

**Other Authorities**

*Annotated Manual for Complex Litigation* (4th ed. Sept. 2024 Update) ......... 48, 49

Consent.Decr., *Ohio v. Norfolk S. Corp.*, No. 23-cv-517
(N.D. Ohio filed May 23, 2024), Dkt.138-1 .............................................. 34, 37

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist
and Plain Language Guide* (2010) ....................................................... 49

*McLaughlin on Class Actions* (21st ed. Oct. 2024 Update) .............................. 4, 48

Meg McLeod, *Flint Water Crisis Bellwether Trial Delayed Again*,
WNEM5 (Oct. 29, 2024), https://tinyurl.com/yc2tb22j ..................................... 35

Richard A. Nagareda, *The Preexistence Principle and the Structure of the
Class Action*, 103 Colum. L. Rev. 149 (2003) ........................................... 4

*Newberg and Rubenstein on Class Actions*
(6th ed. Nov. 2024 Update)....................................................................49

Wright & Miller, *Federal Practice & Procedure*
(4th ed. Aug. 2024 Update).............................................................. 25

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellees ("Plaintiffs") respectfully request oral argument. These consolidated appeals arise from the final approval of a $600,000,000 class-action settlement. Oral argument will aid the Court in resolving the dispute.

## INTRODUCTION

The 2023 Norfolk Southern train derailment had a devastating effect on East Palestine, Ohio.  This $600 million settlement agreement allows the community to turn the page by providing meaningful compensation to thousands of victims.  The fairness and value of this settlement is underscored by the paucity of opt-outs and objectors.  Indeed, these nearly identical appeals by a handful of objectors all represented by the same attorney—who notably had no involvement in the litigation of the claims or until after the settlement was announced—are all that stand in the way of compensating class members and closing this chapter.

After aggressively litigating and then mediating, the parties decided that settlement was in the best interest of the class, the community, and the public.  The parties' mediator recognized that, absent a settlement, the case was unlikely to be resolved anytime soon due to its complex factual and legal nature.  Further litigation guaranteed that recoveries would be delayed without any guarantee of recovery for the many thousands of individuals and businesses affected by the derailment.  After conducting six months of extensive and exhaustive discovery—including Class Counsel taking more than 70 depositions—while simultaneously engaging in multiple rounds of formal mediation and informal negotiation, Class Counsel and Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively, "Norfolk Southern") agreed to a mediator's proposal that

recommended a $600,000,000 settlement agreement ("Settlement"), a milestone recovery in a railroad derailment case. The mediator indicated that this was an excellent outcome for the class and would provide "substantial and expeditious relief" to the community. The district court, which oversaw this case since its inception and understood the risks of further litigation better than anyone, agreed and found the Settlement fair, reasonable, and adequate after fully considering the Settlement's terms, the parties' robust submissions, the relatively few objections, and the applicable law, and after conducting an almost-three-hour fairness hearing where Class Counsel, Norfolk Southern, and all objectors were given an opportunity to be heard. Across three separate orders, the court approved the Settlement, the proposed distribution plan, and Class Counsel's request for attorneys' fees.

Joseph Sheely, Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno (collectively, "Objectors") now seek to undo the Settlement and deprive the overwhelming majority of class members of the relief it offers. All Objectors received adequate notice of the Settlement terms and an opportunity to opt out. Yet many of their arguments before this Court were not raised below; to grant Objectors' request to undo the settlement on those grounds would prejudice both the parties who were denied an opportunity to respond and the district court who never got an opportunity to consider and rule on them. Regardless, Objectors' arguments blink

reality and demonstrate a basic misunderstanding of both the law and the Settlement itself.

If Objectors had such consternation with the Settlement, they were free to opt out and pursue litigation against Norfolk Southern individually. Having chosen to remain in the class, Objectors have not provided any valid basis for depriving the overwhelming majority of class members who favored the Settlement of the substantial monetary compensation and peace of mind the Settlement offers. The Settlement is more than fair, reasonable, and adequate. The parties made the correct choice in settling this matter and offering substantial monetary relief and closure to the community. And the district court did not abuse its discretion in holding as such. This Court should affirm.

## JURISDICTIONAL STATEMENT

Plaintiffs do not dispute Objectors' jurisdictional statements.

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in approving the Settlement as fair, adequate, and reasonable, and preferable to serious trial and appellate risks and years of delay.

2. Whether the opt-out period and notice were adequate for class members to make informed decisions about whether to participate.

3. Whether, in the unlikely event this Court remands for further proceedings, the case should be reassigned to a different district judge, vitiating Judge Pearson's almost two years of knowledge and experience with these litigants and this litigation.

## STATEMENT OF THE CASE

### A.    Legal Background

Class actions serve vital functions in our legal system.  For plaintiffs, they allow for the "vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  For defendants, they can be used "to consensually resolve on a global basis all claims arising out of an event or transaction that otherwise could mire a company or an industry in decades of litigation with myriad adversaries."  1 *McLaughlin on Class Actions* §1.3 (21st ed. Oct. 2024 Update).

As with most litigation, "[s]ettlements, not judgments after trial, stand overwhelmingly as the end result of [class actions] that are not resolved on dispositive motions."  Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 151 (2003).  "[F]ederal policy favor[s] settlement of class actions."  *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).  "Significantly, in assessing whether [a] settlement is fair, equitable, and reasonable," a court "must not forget that it is reviewing a settlement proposal

rather than ordering a remedy in a litigated case." *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 649 (6th Cir. 2009). "Accordingly, … the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public," and "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (quotation marks omitted and emphasis removed).

Federal Rule of Civil Procedure 23(e)(2) governs settlement approvals that "would bind class members." A court "may approve [a class-action settlement] only after" holding a fairness hearing and "only on finding that [the settlement] is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate …; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors were added to Rule 23 in 2018. While they "focus[] on the primary procedural considerations and substantive qualities that should always matter" to the approval decision, they were not meant "to displace any factor" courts had previously considered; rather, they were meant to "focus the court and the lawyers on the core concerns of procedure and substance." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Before the 2018 amendment, this Court looked to seven slightly different (albeit highly overlapping) factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. These factors provide helpful guidance to district courts in assessing the ultimate question whether the settlement is fair, adequate and reasonable without unduly constraining that analysis. Thus, district courts "enjoy[] wide discretion in assessing" these factors' "weight and applicability." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

This Court has not yet addressed the effect of the 2018 amendment on the *UAW* factors. The district court here considered both sets of factors in approving the Settlement. *See* Final.Appr.Order, R.557 ¶7, PageID#14582. That approach accords with the caselaw of other circuits. *See, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

Regardless of the precise factors that guide review of a class-action settlement, it is well settled that balancing them is primarily directed to the trial court, and appellate review is deferential, especially when the district court has lived with the case for an extended period and is not just evaluating a pre-packaged settlement. *See*

*Robinson*, 566 F.3d at 648 ("a district court's familiarity with the litigants and the litigation … is a valuable asset which should not be lightly discarded").

## B. Factual and Procedural Background

1. This case arises out of the derailment of Norfolk Southern Train 32N in East Palestine, Ohio, on February 3, 2023. The derailment resulted in releases of toxic and hazardous materials into the air, ground, and water, invading surrounding properties and affecting the local community. Immediately following the derailment, multiple hazardous chemicals ignited and continued to burn for three days. 1st.Am.Master.Class.Action.Compl. ("Operative Complaint" or "Oper.Compl."), R.138 ¶¶172-79, PageID#1799-802. Then, in response to a concern that one railcar carrying vinyl chloride had a malfunctioning safety valve and increasing pressure, Norfolk Southern and its contractors conducted a "vent and burn" of five cars containing vinyl chloride, causing an explosion and allegedly sending toxic chemicals over East Palestine and the surrounding areas. *Id.* ¶¶179, 183-85, 279, PageID#1802, 1804, 1830-833.

2. In the immediate aftermath of those devastating events, many affected individuals retained lawyers (including Class Counsel) and numerous experts— including in the railroad and chemical industries, in soil and air sampling and modeling, and in environmental contamination. Graham.Decl., R.518-2 ¶13,

PageID#10945-946.[2]  Class-action complaints were filed within days of the derailment.  *Id.* ¶14, PageID#10946.  Class Counsel acted quickly to protect crucial evidence and ensure that certain wreckage would be preserved for expert inspection, moving for a Temporary Restraining Order and Preliminary Injunction on February 24, 2023.  *Id.* ¶15, PageID#10946.  The parties appeared for a Zoom hearing three days later, at which Norfolk Southern agreed to allow Plaintiffs time to inspect the railcars both on- and off-site.  *Id.* ¶16, PageID#10946-947.  Class Counsel and retained experts then decamped to East Palestine to conduct inspections and gather evidence, including multiple visits to the derailment site.  *Id.* ¶¶16-17, PageID#10946-947.

3. More suits hit the docket.  Due to the volume of filed cases, Judge Benita Y. Pearson ordered Class Counsel Seth A. Katz and M. Elizabeth Graham to coordinate a motion proposing a class counsel structure, a joint status report, and related briefing, and ordered Class Counsel Jayne Conroy to file all documents.  Coord.Order, R.20, PageID#133.  On April 5, 2023, the court consolidated 31 pending cases into one master class action, appointed Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy as Interim Class Counsel, and appointed Mr. Katz, Ms.

---

[2] Citations to the "Graham" declaration are references to Class Counsel M. Elizabeth Graham, not Objectors' Counsel, David Graham.

8

Graham, Ms. Conroy, and T. Michael Morgan as Co-Lead Counsel.  Cons.Order, R.28, PageID#562-565, 569.[3]

4. Class Counsel filed a 92-page Master Consolidated Class Action Complaint less than a month later.  1st.Compl., R.31, PageID#667-760.  After further discovery, and after Norfolk Southern filed a Third-Party Complaint against some of the railcar owners, Class Counsel filed the Operative Complaint in mid-August 2023.  *See* Oper.Compl., R.138, PageID#1771-876.  Both complaints contain detailed factual allegations against Norfolk Southern, and both resulted from Class Counsel's highly intensive investigation of the derailment.

In between filing the original and operative complaints, Norfolk Southern moved to dismiss the entire case, arguing that federal law preempted many of Plaintiffs' claims and that all the claims failed to meet pleading burdens. NorfolkSouthern.Memo.ISO.MTD., R.76-1, PageID#1001-054.  Plaintiffs filed a thorough opposition.  Pltfs.Memo.Opp.MTD, R.103, PageID#1204-255.[4]  The district court denied Defendants' motions almost entirely, dismissing only Plaintiffs'

---

[3] A 32nd case was added to the consolidation a month later.  *See* Cons.Order, R.30, PageID#666.

[4] Class Counsel also responded to motions to dismiss from other defendants.  *See* MTDs, R.205, 206 & 206-1, 207 & 207-1, PageID#2301-340, 2341-388, 2389-421; Pltfs.Memos.Opp.MTDs, R.232, 233, 234, PageID#2863-899, 2900-940, 2973-3014.

cause of action for medical monitoring under Ohio law. MTD.Order, R.428, PageID#5578.[5]

5. Focusing on a desire to obtain fair relief for the community as swiftly as possible, Plaintiffs and Class Counsel, coordinating and directing the work between 40 firms, moved with dispatch to discover relevant facts and compile appropriate expert analyses. Accordingly, Class Counsel proposed an early trial date and an aggressive pre-trial schedule, demanding numerous tracks for discovery and class certification. On June 28, 2023, the district court set January 5, 2024, as the close of fact discovery and ordered Plaintiffs to provide written expert reports in April 2024. Case.Mgmt.Plan, R.98, PageID#1167. With only six months to work, Class Counsel engaged in exhaustive discovery, including:

- Sending FOIA or state-equivalent requests to at least 27 entities to obtain information about the derailment. Graham.Decl., R.518-2 ¶25, PageID#10948.

- Reviewing voluminous document production from defendants, totaling over 1,345,000 documents containing highly technical information about various pertinent topics. *Id.* ¶27, PageID#10949.

- Working with the sixteen Class Representatives to answer interrogatories, defend depositions, gather medical records for discovery responses, prepare privilege logs, and produce nearly 7,000 documents for Defendants. *Id.* ¶¶28, 30, PageID#10949-950.

---

[5] The court clarified that medical monitoring could be imposed as an element of damages if Norfolk Southern were found liable for a different underlying tort claim. MTD.Order, R.428, PageID#5578.

- Coordinating with Norfolk Southern to inspect each of Class Representatives' property and being present for those inspections, which took two-to-five hours each. *Id.* ¶29, PageID#10949-950.

- Taking approximately 70 additional depositions (besides the ones involving Class Representatives). *Id.* ¶31, PageID#10950.

- Conducting and coordinating an almost immediate and extensive environmental sampling and testing program that included determining background levels of relevant contaminants in the area, engaging an air modeler to determine the spread of contaminants from the derailment, and then sampling and testing approximately 160 sites in and around East Palestine, covering a 2,800-square-mile area. *Id.* ¶¶32-33, PageID#10950-951.

Class Counsel also litigated discovery issues against the National Transportation Safety Board regarding the preservation and production of critical evidence, appeared before the district court for conferences related to case management and discovery, and participated in numerous meet and confers. *Id.* ¶¶35-38, PageID#10951-952. All this was done against the backdrop of Norfolk Southern's counsel repeatedly indicating that they planned to appeal any loss, whether on class certification or the merits. *Id.* ¶36, PageID#10952.

6. While discovery was ongoing, the parties began initial settlement talks. In October 2023, the parties engaged in a two-day mediation with retired United States District Judge Layn R. Phillips. *Id.* ¶53, PageID#10955. Those discussions ended without agreement, but the parties continued informal negotiations over the ensuing months. *Id.* ¶¶54-55, PageID#10956. The parties attended a second formal mediation with Judge Phillips in February 2024. *Id.* ¶56, PageID#10956. That also

ended without agreement, but the parties continued to engage in near-daily discussions filtered through Judge Phillips. *Id.* Finally, after the months-long back-and-forth discussions, Judge Phillips presented a mediator's recommendation, which all parties accepted. *Id.* ¶58, PageID#10957.

Co-Lead Counsel announced an agreement in principle with Norfolk Southern in early April, and the parties executed the Settlement on April 26, 2024. *Id.* ¶60, PageID#10957. The district court preliminarily approved the Settlement and appointed Interim Class Counsel as Lead Class Counsel for the Settlement. Prelim.Appr.Order, R.458 ¶¶2, 4, PageID#6174, 6176. The court also set deadlines for key events, including providing notice to the class and filing of objections or opt-out requests. *Id.* ¶23, PageID#6182.

7. Class Counsel worked with Kroll Settlement Administration LLC ("Kroll") to execute the notice plan. Graham.Decl., R.518-2 ¶62, PageID#10958. The plan involved direct notice via First Class Mail to class members within a 20-mile radius of the derailment site, newspaper publication in ten surrounding communities, geo-targeted online display banners within a 20-mile radius of the derailment site, Google keyword search advertising, social media advertising within a 20-mile radius of the derailment site, and a geographically targeted press release. Finegan.Decl., R.495-1, PageID#8892. Class Counsel participated in the notice efforts by holding several community meetings both in-person and via Zoom. Fair.Hear.Tr., R.553,

PageID#14474.  Counsel leased a space in East Palestine to serve as a Claims Center, "where members of the community could seek assistance with their claim forms or ask questions."  Graham.Decl., R.518-2 ¶62, PageID#10958.  Along with Kroll staff, members of Class Counsel's law firms staffed the Claims Center, which opened on June 3, 2024, to assist community members during the notice and claim periods.  *Id.* Kroll provided a phone number for people to call if they had questions. Pltfs.MOL.ISO.Final.Appr., R.518-1, PageID#10914.

8. Response to the Settlement was overwhelmingly positive.  54,925 claims were filed as of September 5, 2024.  Graham.Decl., R.518-2 ¶64, PageID#10959. By contrast, only 86 class members filed objections, and only 370 households and 47 businesses opted out, yielding a combined opt-out/objection rate less than 1%. *Id.* ¶65, PageID#10959.

9. Judge Pearson held a fairness hearing on September 25, 2024.  At the three-hour hearing, Judge Pearson acknowledged Objectors' Counsel and that he had "filed much" in terms of documentary submissions on behalf of Objector Sheely, all of which she made clear she had read.  Fair.Hear.Tr., R.553, PageID#14433-434. Later in the hearing, Judge Pearson reiterated that she had read all submitted objections and "was affected by what [she] read."  *Id.*, PageID#14480; *see also id.*, PageID#14458 (discussing Objector Sheely's "additional filings").  Judge Pearson offered Mr. Graham, who attended the hearing, the opportunity to address the court,

but he declined. *Id.*, PageID#14433. After considering all objections, Judge Pearson concluded that "the fairness and adequacy of the settlement require[d] [her] to overrule any and all of th[e] objections." *Id.*, PageID#14537. In three separate orders, Judge Pearson approved the Settlement, Class Counsel's request for attorneys' fees and service awards, and the proposed distribution plan. Final.Appr.Order, R.557, PageID#14580-586; Atty.Fee.Order, R.556, PageID#14547-579; Distr.Plan.Order, R.555, PageID#14543-546.

10. Objectors timely appealed only the Final Approval Order. Sheely.Not.App., R.558, PageID#14587, Troyan.et.al.Not.App., R.570, PageID#14768.[6]

## C. The Settlement

The Settlement created a non-reversionary cash fund of $600,000,000. Settlement, R.452-2 §II.SS, PageID#6014; *see* Fair.Hear.Tr., R.553, PageID#14504 (testimony that this amount exceeds all recoveries in other similar cases). That amount, less administrative expenses, fee awards, and service awards, *see* Settlement, R.452-2 §XIII.B, PageID#6022-023, would be allocated to members of the "Settlement Class"—defined as "all Persons and Businesses residing, owning or

---

[6] This Court consolidated Objector Sheely's appeal (No. 24-3852) with the other Objectors' appeal (No. 24-3880) to have the independently briefed appeals be submitted to the same panel for consideration. Cons.Order, No. 24-3852 CA6.Dkt.33 at 1. Due to the substantial overlap between Appellants' arguments in those two cases, Plaintiffs file this one brief to address both appeals.

otherwise having a legal interest in property, working, or owning or operating a business within a 20-mile radius of the Derailment Site, from February 3, 2023 to the Settlement Date," *id.* §II.QQ, PageID#6013—in one of three ways.

The first option is for "Direct Payments," wherein class members who submit an approved Claim Form receive a pro rata direct payment, with the pro rata amount determined "per Household." *Id.* §XIII.C.1, PageID#6023. This portion of the Settlement "compensates communal or shared losses" of "use and enjoyment of property, shared use of personal property within the home, [and] communal expenses associated with relocation or displacement." Fair.Hear.Tr., R.553, PageID#14494-495. That focus on shared injuries—and the fact that not every affected individual has proper documentation to prove eligibility—is why the Direct Payments are awarded on a per-household, rather than individual, basis. Each household's pro rata share is based on a point grading system that considers more than a dozen categories of information and data, Distr.Plan.Memo, R.519-1, PageID#11226-227, less any prior payments Norfolk Southern made to the member(s) "arising from or relating to" the derailment. Settlement, R.452-2 §XIII.C.1.e, PageID#6023-024. The point grading system operates from the assumption that although all class members experienced similar types of damages from the derailment, the severity of a particular member's injuries may vary significantly depending on the various factors. Distr.Plan.Memo, R.519-1, PageID#11225. The subtraction of prior

payments helps prevent double recovery and thus helps maximize the number of class members able to obtain substantial recovery from the Settlement fund. *Id.*, PageID#11230. For purposes of the Direct Payments, class members are considered part of the putative settlement class unless they affirmatively opted out by the court-approved opt-out date of July 1, 2024. *See* Prelim.Appr.Order, R.458, PageID#6182.

The second route for recovery is for "Business Loss Payments," which allow eligible businesses to recover "actual net business financial loss" that occurred because of the derailment. Settlement, R.452-2 §XIII.C.2.a-b, PageID#6024. Like the Direct Payment program, recovery of Business Loss Payments is "less any prior payments, settlements, loans, or other financial payments" from Norfolk Southern "arising from or related to" the derailment. *Id.* §XIII.C.2.c, PageID#6024. Also like the Direct Payments, class members are considered part of the putative settlement class unless they opted out. *See* Prelim.Appr.Order, R.458, PageID#6182.

The third avenue for recovery is for voluntary "Personal Injury Payments", which are designed to address assumed exposure to toxins, and are not subject to any class release. Settlement, R.452-2 §XIII.C.3, PageID#6024. As with the Direct Payments, Personal Injury Payments are determined using a point system that considered nearly 30 factors across eight categories of information. Distr.Plan.Memo, R.519-1, PageID#11227-229. But unlike the Direct Payments route, recovery of Personal Injury Payments is completely voluntary and the awards

are determined on an individual, not a per-household, basis. *See* Settlement, R.452-2 §XIII.C.3.b, PageID#6024. The opportunity to recover a Personal Injury Payment is also limited to individuals within a 10-mile radius of the derailment site. *See id.* Finally, and most important for present purposes, an eligible class member who wanted to participate in the Personal Injury Payments program had to affirmatively elect to participate in this aspect of the Settlement. Whether the individual chose to participate in the Personal Injury Payment program had no effect on the individual's ability to recover under the other categories of payments. *See* Long.Form.Not., R.452-5, PageID#6133.

A class member who voluntarily participated in the Personal Injury Payment program had to execute a Personal Injury Release, releasing forever any right of the class member to make a personal-injury claim "arising out of, due to, resulting from, or relating in any way to, directly, or indirectly" the derailment even if the class member was currently unaware of such claim and even if such claim "ar[o]se in the future or d[id] not manifest [itself] until the future." Settlement, R.452-2 §XIII.C.3.b, Ex.E, PageID#6024, 6064. If a class member did not affirmatively choose to participate in this part of the Settlement, she remains free to pursue a personal-injury claim in separate litigation now or in the future; personal-injury claims explicitly were *not* released as part of the Settlement. *Id.* §II.MM.1, PageID#6012.

Four other details about the Settlement and the allocation of funds merit mention. First, under the Direct Payments and Personal Injury Payments programs, a class member could seek additional recovery beyond her initial pro rata share if she could demonstrate that she suffered extraordinary loss or damage. *Id.* §XIII.C.1.d, 3.c, PageID#6023, 6025. Second, determinations of pro rata shares under the Direct Payments part of the Settlement would be made after payment of "approved Business Loss Payments, Personal Injury Payments, the Fee Award, Service Awards, and Administrative Expenses." *Id.* §XIII.C.1.a, PageID#6023. Third, any ultimately unallocated monies for Business Loss Payments and Personal Injury Payments would be reallocated to the Direct Payments distribution (which, again, flows to everyone in the class who did not affirmatively opt out and submitted a claim). *Id.* §XIII.C.2.e, 3.i, PageID#6024, 6026. Finally, while Norfolk Southern had to pay an initial $5,000,000 fourteen days after the grant of preliminary approval, and the Personal Injury amount and attorney fee award within fourteen days after the grant of final approval, *id.* §XII.E-F, PageID#6022, the remainder of the $600,000,000 is not distributed until these appeals are resolved—greatly delaying recovery to a great number of class members. *Id.* §II.S, §XII.G, PageID#6010, 6022.

## SUMMARY OF ARGUMENT

The Settlement will give class members meaningful compensation and provide a devastated community a sense of closure. Only these appeals by a handful

of objectors—as compared to the over 50,000 victims who already filed claims—stand in the way. Rather than opting out and pursuing individual litigation while allowing the overwhelming majority of class members who support the Settlement to receive their shares, Objectors seek to delay recovery for the entire class based on half-baked (and in many cases, forfeited) complaints. The district court found the Settlement to be fair, reasonable, and adequate after living with the case for a year and a half and considering volumes of record documents. That decision was correct and by no means an abuse of discretion.

**I.** The district court acted well within its ample discretion in approving the Settlement as fair, reasonable, and adequate. The Settlement is a far better alternative for the class than the delay and risk that would accompany what would likely be a years-long litigation slog through trial and appeal (and perhaps back down for more), which likely explains why over 99% of the class members support it and only a handful of objectors—less than .01% of the class—have appealed.

Those objectors make up for the paucity of their numbers by raising a litany of complaints about the Settlement approval. Some of them are frankly hard to decipher; all of them are meritless. Class Counsel adequately represented the class and helped secure the largest-ever known recovery in this type of case. Objectors' complaints that there are conflicting indications about the extent of the health risks caused by the derailment miss the point. Uncertainty is inherent in this situation,

and Class Counsel zealously advocated on behalf of the class: They fought off multiple dispositive motions; they engaged in extensive discovery that included preserving evidence, reviewing over one million documents (many of them highly technical), and retaining and consulting with experts in various industries; and they ultimately secured a nine-figure deal—all in less than two years.

This was far from a pre-packaged settlement. Class Counsel engaged in substantial discovery and preliminary skirmishing in court while also engaging in both formal and informal good-faith, arms-length negotiations with Norfolk Southern. Those negotiations involved six months of effort and endless back-and-forth before both parties accepted a mediator's proposal that resulted in the Settlement. The resulting Settlement provides substantial monetary relief to the class, especially considering the risks, costs, and delays of trial and appellate litigation that could have stretched out for years and potentially ended with diminished or no recovery. And the Settlement treats class members equitably as recovery is keyed to either actual losses for businesses or a reticulated point system that carefully measures each claimant's injury. Service awards for Class Representatives reflect their level of commitment and involvement in this litigation. All Objectors' contrary arguments fall flat.

**II.** Objectors' complaints about the length of the opt-out period and the substance of the class notice are equally meritless. The relevant sources, including

those Objectors invoke, are unanimous that the 31-day opt-out period here was sufficient.

Regarding the notice, no Objector raised any of these concerns before the district court, so these arguments are forfeited. They are also baseless. The notice adequately informed class members of the nature of the litigation and their rights, satisfying both due process and Rule 23. The notice indicated that class members could find all relevant documents—including the Operative Complaint and the Settlement itself—at the settlement website and directly listed that site. What is more, Class Counsel established a Claims Center in East Palestine in early June at the start of the opt-out period where members of Class Counsel's firms and settlement administration staff were available throughout the opt-out and claims period, including evenings and on weekends, to answer questions about the Settlement. In addition to that in-person option, Class members could ask questions or seek additional information from Class Counsel and/or the settlement administrator by phone or email. In short, Class members (including Objectors) had more than adequate notice and information to make informed decisions about whether to participate.

**III.** Finally, Objectors' request for reassignment on remand in the unlikely event that this Court vacates the Settlement approval has nothing to recommend it. Objectors have not come close to demonstrating that Judge Pearson would be unable

to properly adjudicate the case on any remand. Similarly, Objectors failed to demonstrate that Judge Pearson has any personal bias towards them, nor did they follow the proper procedures in making such an allegation. On the flip side, reassignment would nullify Judge Pearson's knowledge of the litigants and litigation, which she developed over the year and a half she spent with this extremely complex case. Starting over with a new judge would cause untold delays, further injuring the overwhelming majority of the class who favor the Settlement, stand to reap its ample benefits, and wish to see this ordeal brought to a close.

## STANDARD OF REVIEW

This Court reviews "a district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). This deference acknowledges that a district court's "familiarity with the litigants and the litigation … is a valuable asset which should not be lightly discarded." *Robinson*, 566 F.3d at 648. The facts are viewed in the light most favorable to the settlement, and the district court's factual findings are reviewed for clear error. *Id.* at 647. Additionally, this Court reviews the approval of "class counsel's attorney fee request under an abuse-of-discretion standard." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016).

This Court also reviews the denial of a motion to enlarge time for abuse of discretion. *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F.App'x 369, 377 (6th

Cir. 2009); *see also In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "Factual findings regarding notice are reviewed for clear error," but "[w]hether a particular class action notice program satisfies" Rule 23 and due process "is a legal determination [this Court] review[s] *de novo*." *Fidel*, 534 F.3d at 513.

Finally, reassigning a case under 28 U.S.C. §2106 "is an extraordinary power and should be rarely invoked" and "should be made infrequently and with the greatest reluctance." *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 683 (6th Cir. 2002). This Court reviews a properly presented motion for recusal under 28 U.S.C. §144 for abuse of discretion. *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003).

## ARGUMENT

### I. The District Court Acted Within Its Broad Discretion In Approving The Settlement.

The Settlement the mediator recommended, the parties reached, and the district court approved is more than fair, reasonable, and adequate, especially considering the potential for years of uncertain litigation if the case had proceeded to trial. Instead of subjecting the class to the vagaries of further litigation, Class Counsel obtained the guarantee of substantial relief. $600,000,000 is a milestone settlement, but it is not even the end of what the Settlement has engendered: Norfolk Southern is currently working on a consent decree that would create a $25,000,000 medical-monitoring fund for eligible community members—and as the district court

23

correctly noted, the Settlement is at least partly responsible for making that additional fund a potential reality, *see* Fair.Hear.Tr., R.553, PageID#14461. All this explains both the district court's approval of the Settlement and the class's overwhelmingly positive response. Almost 55,000 claims were filed as of September 5, 2024. Graham.Decl., R-518-2 ¶64, PageID#10959. By contrast, just 86 class members objected, and only 370 households and 47 businesses opted out. *Id.* ¶65, PageID#10959. And while an unhappy few persist in challenging the Settlement on appeal and delaying payments to their neighbors, none of their arguments has merit.

### A. Class Counsel and Class Representatives Adequately Represented the Class.

1. Rule 23(e)(2)'s first requirement in finding a settlement fair, reasonable, and adequate is that a district court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The focus of this factor is "'procedural,'" "looking to the conduct of the litigation"; specifically, "the nature and amount of discovery … may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.[7] "What constitutes adequate representation is a question of fact that depends on the

---

[7] This overlaps with this Court's assessment of "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631.

circumstances of each case." 7A Wright & Miller, *Federal Practice & Procedure* §1765 (4th ed. Aug. 2024 Update). The district court found that Class Representatives and Class Counsel satisfied this factor and then some, noting Representatives' engagement in the litigation and discovery and Counsel's "extensive" work from inception through settlement. Final.Appr.Order, R.557 ¶8, PageID#14582.

That assessment was plainly correct: Class Representatives and Class Counsel went far beyond merely adequate representation. Class Representatives worked with Counsel to answer interrogatories, respond to requests for document production (including providing their private medical records for discovery), participate in Norfolk Southern's independent inspections of their properties, and sit for depositions. Graham.Decl., R.518-2 ¶¶28-30, PageID#10949-950. Class Counsel's efforts were (appropriately) even more extensive. As described in greater detail above, *see* pp.7-13, *supra*, Class Counsel expended over *59,000 hours* coordinating attorneys from the various individual and class actions into this master class action, filing a 92-page original complaint and 104-page operative complaint, engaging in motions practice (including opposing multiple motions to dismiss), and conducting thorough discovery, including reviewing over a million documents, conducting and defending more than 70 depositions, responding to interrogatories, and retaining and consulting with a host of experts. Counsel also engaged in

mediation and negotiations with Norfolk Southern to reach this Settlement—and, once it was preliminarily approved, helped staff the Claims Center in East Palestine to answer class members' questions. Graham.Decl., R.518-2 ¶¶51-60, 62, PageID#10955-958.

2. Objectors nonetheless accuse the district court of "fail[ing] its obligation to independently evaluate the quality of class counsel's performance." Sheely.Br.37; Troyan.Br.39.[8] That simply blinks reality. The district court—which oversaw and managed this case for eighteen months and witnessed first-hand Counsel's dedication to the class—went out of its way to note Class Counsel's extensive work throughout this litigation on behalf of the class. *See* Final.Appr.Order, R.557 ¶8, PageID#14582; Atty.Fee.Order, R.556, PageID#14548-555.

Objectors also apparently believe that Norfolk Southern's motion to dismiss was frivolous and that Class Counsel should not be credited for successfully defending against it. *See* Sheely.Br.37; Troyan.Br.38. But it should go without saying that the fact that Class Counsel ultimately defeated the motion in nearly all respects does not mean that the motion was anything other than a serious threat to the class' timely recovery, or that this Court would have necessarily agreed with the district court's resolution of the issues in all respects. Graham.Decl., R.518-2 ¶40,

---

[8] Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno filed a single brief in case No. 24-3880. That brief will be referred to as "Troyan.Br."

PageID#10952. Simply put, Class Counsel's resounding success in rebuffing Norfolk Southern's efforts to defeat this case at the threshold is powerful evidence of Counsel's adequacy, not evidence to the contrary.

Objectors next contend that no showing was made that the million-plus documents Class Counsel reviewed in discovery were "relevant, substantive, or even reviewed." Sheely.Br.37; Troyan.Br.39. Once again, Objectors cite nothing to support this charge—because there is nothing to it. Aggregate litigations are often document-intensive, *see, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F.Supp.3d 1094, 1100 (D. Kan. 2018); *Chieftain Royalty Co. v. XTO Energy Inc.*, 2018 WL 2296588, at *5 (E.D. Okla. Mar. 27, 2018), and this case was no exception. Counsel's 59,000 hours spent on this case undermine any suggestion it did not take the case—including the discovery phase—seriously.

3. Objectors' final accusation is both the most serious and the most fanciful. Objectors allege that Class Counsel "suppress[ed] the number of opt-outs and objectors through evidentiary manipulation." Sheely.Br.20-24; Troyan.Br.22-26. Specifically, they claim that Class Counsel "produced a video featuring 'plaintiffs' expert,' Dr. Arch Carson," and that this video contradicted affidavits and declarations that Objector Sheely (and/or counsel for objectors not before this Court) added to the record. *Id.* They also contend that the district court failed to adequately address Class Counsel's supposed "suppression or disregard of critical soil sampling data,"

which Sheely lodged in the record before the fairness hearing. Sheely.Br.40-42; Troyan.Br.42-43.

The problems with these contentions are legion. First, Objectors likely lack standing to raise them. As explained above, the Personal Injury Payments portion of the Settlement is voluntary: Class members were given the ability to participate and receive immediate financial recovery, or they could do nothing in which case they would retain the right to pursue individual personal-injury actions against Norfolk Southern arising out of the derailment now or in the future. *See* pp.16-17, *supra*. There is no record evidence that Objectors participated in the Personal Injury Payments program. Objectors would thus all remain free to pursue personal-injury claims against Norfolk Southern using their own data and evidence. Thus, to the extent Objectors believe that they have superior evidence showing the "hazards [class members] faced from environmental toxins," and so their personal-injury recoveries could exceed the Settlement amount, *see* Sheely.Br.20; Troyan.Br.22, they would remain free to put that theory to the test—which means that any supposed deficiency in the class' evidence has not harmed, and could not harm, them. Objectors accordingly lack standing to raise this objection. *See In re Flint Water Cases*, 63 F.4th 486, 503 (6th Cir. 2023).

Objectors' assertion fares even worse on the merits, as it proceeds from a false premise: Class Counsel stated on the record that they did not retain Dr. Carson as

an expert. Fair.Hear.Tr., R.553, PageID#14477. Regardless, nothing in Dr. Carson's video alters the dynamics here, and any supposed inconsistencies between the exhaustive expert evidence Class Counsel developed and the narrative put forward in Dr. Carson's video are irrelevant to adequate representation. There is no dispute that the numerous experts Class Counsel retained performed qualified testing, identified threshold levels of the contaminants and likely dispersion patterns, and identified the universe of relevant risks. *See id.*, PageID#14478. And while Objectors may have more faith in an alternative narrative, they cannot deny that there is considerable uncertainty about whether, when, or how "the types of diseases that are connected to the types of toxins that were on the railcars [may] result … in symptoms decades down the road." *Id.*, PageID#14479; *see also id.*, PageID#14476.

As for the soil-sampling data Objectors reference, Class Counsel made clear that some of the data in Objectors' submissions were already known and deemed unreliable; even the new declarations contained no new insights. And none of these alternative data and declarations changed the retained experts' conclusions. *See id.*, PageID#14486-487. Judge Pearson acknowledged these declarations and stated that she had read them before approving the Settlement. *Id.*, PageID#14458. The district court was free to conclude that Class Counsel had an adequate basis of information to fairly assess the claims and the Settlement Fund amount, and that Objectors'

declarations had no bearing on the adequacy of Class Counsel's representation or the fairness of the Settlement.

In sum, Class Representatives and Counsel more than adequately represented the class in reaching this Settlement, and the district court did not clearly err in making that factual determination.

## B. The Settlement Was Reached Through Arms-Length Negotiations, and There Was No Collusion.

1. The second Rule 23(e) factor requires courts to determine whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Like the adequate-representation factor, this consideration is one of Rule 23(e)'s "'procedural' concerns" and looks to "[t]he conduct of the negotiations" and "the involvement of a neutral … mediator … in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.[9]

The district court found that "[t]he Settlement was vigorously negotiated, conducted at arm's length, entered in good faith, and is free of fraud or collusion," satisfying Rule 23(e)(2)(B). FinalAppr.Order, R.557 ¶9, PageID#14583. As the court highlighted, "the Settlement w[as] reached with the assistance of a highly qualified mediator" and, indeed, Judge Phillips' Recommendation formed the basis

---

[9] This overlaps with the consideration of "the risk of fraud or collusion." *UAW*, 497 F.3d at 631.

of the Settlement.  *Id.*  Judge Phillips likewise noted that "Counsel vigorously presented arguments regarding their clients' positions, with a candid discussion of their strengths and weaknesses," and emphasized that "[t]he degree of advocacy by counsel throughout [the mediation] process was exceptionally ethical, informed, engaged, and effective."  Phillips.Decl., R.518-5 ¶¶11, 17, PageID#11087-089.

2. Against all this, Objectors claim the Settlement was not in fact negotiated at arms-length, and they accuse Class Counsel of colluding with Norfolk Southern. Sheely.Br.24-25; Troyan.Br.26-27.  Much of this complaint depends on their just-discussed disagreement with the class' experts' scientific conclusions.  Differences about the strength of the evidence—especially when it comes to evaluating future risk—do not amount to serious allegations of collusion.

That is doubly true given "[t]he duration and complexity of the litigation," which generally indicates a lack of collusion.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009).  *Moulton* highlighted the length of litigation, that "Class Counsel pursued multiple avenues to gather evidence," and that the ultimate agreement was the "product of months of supervised negotiations, two facilitated mediations and a settlement conference with the court."  *Id.*  Other than a settlement conference with the court, that describes this case to a T.  The notion that all of those hard-fought hours were a ruse, and that the Settlement was really just the product of

collusion, "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013).

Objectors' other complaints are similarly bereft of substance. Objectors appear to take issue with the fact that no expert reports were exchanged and no expert depositions were taken before the Settlement was entered, and that Class Counsel supposedly kept the findings of retained experts "a closely guarded secret." Sheely.Br.25; Troyan.Br.26-27. But that was simply a product of the timing of the settlement vis-à-vis the court's expert disclosure deadlines. There was nothing remotely sinister about that timing, and there is certainly no rule that settlements must await the exchange of expert reports. To the extent either or both sides feel that the exchange of expert reports will change the settlement dynamic in a way that creates a unique opportunity for settlement, that is something the law encourages, rather than views as a hallmark of collusion.

Objectors next engage in a sprawling discussion of attorney-client privilege, work-product privilege, and the crime-fraud exception, and contend that Class Counsel "fraudulently concealed" information and "misled" class members. Sheely.Br.32-34; Troyan.Br.34-36. Nothing about attorney-client privilege or the like was raised below or is (therefore) properly before this Court. *See United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006); *see also Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir.

1995) (noting that "vague references [that] fail to clearly present the objection in the district court" cannot preserve an issue for appeal).  Regardless, allegations that Class Counsel fraudulently misled the court and the class are simply untrue.  As already stated, Class Counsel did not exchange expert reports because the Settlement was reached before they were due as a result of Counsel's decision to aggressively pursue discovery and settlement tracks simultaneously and Counsel's desire to get a fair and reasonable settlement for the community as expediently as possible.

As to disclosing reports to class members, Objectors once again ignore reality.  The Settlement itself *prevented Counsel from doing so*, stating:

> Unless inconsistent with their ethical obligations or order of the Court, … Class Counsel agree that they will not use, *nor will they allow to be used*, any work product derived from discovery in this Action, whether or not any such work product includes information designated protected under the protective order in this case, in the prosecution or litigation of any other case, claim, or action.

Settlement, R.452-2 §XVIII.P, PageID#6035 (emphasis added).  While Objectors acknowledge this provision, they omit the emphasized portion above in their briefs.  Sheely.Br.24 n.14; Troyan.Br.36.  That provision was valuable to Norfolk Southern, which faces other related litigation (both affirmative and defensive) and allowed Class Counsel to negotiate a more favorable settlement for the class.  There is nothing problematic about abiding by the terms of the Settlement.

The Settlement was reached through good-faith, arms-length negotiations.  The district court was right to find Rule 23(e)(2)(B) was satisfied.

## C.     The Settlement Relief Is Adequate.

The third Rule 23(e) factor assesses the adequacy of the relief obtained by looking to, among other things, "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i).[10]  All considerations counsel in favor of affirming the district court's conclusion that the Settlement in this case is (more than) adequate.

1. First, the $600,000,000 non-reversionary cash fund the Settlement created is one of the largest-ever amounts in a railroad-derailment class-action suit and offers substantial recovery to class members.  The mediator (a retired federal judge, who recommended the basics of the Settlement) viewed this as an "excellent outcome" that would "provide substantial and expeditious relief for community members affected by the train derailment."   Phillips.Decl., R.518-5 ¶18, PageID#11089. Outside this case (and no doubt aided by the Settlement), Norfolk Southern is working to enter a consent decree with the United States Department of Justice that will create an additional $25,000,000 fund for medical monitoring.  Consent.Decr., *Ohio v. Norfolk S. Corp.*, No. 23-cv-517 (N.D. Ohio filed May 23, 2024), Dkt.138-1, Art.XI ¶¶48-50.  As the district court concluded, the timing and amount of the relief obtained directly and indirectly from this Settlement is a highly favorable result for the class, particularly given "the complexity and likely duration of

---

[10] This tracks this Court's analysis of "the complexity, expense and likely duration of the litigation" as well as "the likelihood of success on the merits." *UAW*, 497 F.3d at 631.

litigation" and the uncertainty of success on the merits. Final.Appr.Order, R.557 ¶10, PageID#14583.

The costs, risks, and delay from litigating this case to trial and through appeal buttress that conclusion. Norfolk Southern repeatedly averred that it would pursue appeals on any number of issues, including at the class-certification/Rule-23(f) stage and post-trial. Graham.Decl., R.518-2 ¶36, PageID#10952. That alone would have delayed any potential class recovery by years—as the people of Flint, Michigan, can attest. *See* Meg McLeod, *Flint Water Crisis Bellwether Trial Delayed Again*, WNEM5 (Oct. 29, 2024), https://tinyurl.com/yc2tb22j. And even though Counsel succeeded in thwarting Norfolk Southern's motion to dismiss, plenty of litigation hurdles and potential appeals remained; as Judge Phillips noted, "the factual and legal arguments [are] complex," and any litigation would have delayed recovery and any litigation loss would have reduced or even eliminated the class's recovery. Phillips.Decl., R.518-5 ¶14, PageID#11088. Class Counsel made a prudent choice to avoid all of that by reaching a milestone settlement with Norfolk Southern that provided expedient and substantial relief to the class and a sense of closure to the community.

2. Objectors imply that the relief the Settlement makes available is insufficient. *See* Sheely.Br.16, 17, 26-28; Troyan.Br.18, 19, 27-31. While the exact grounds for that assertion are opaque, Objectors' most specific critique seems to be

that medical-monitoring claims were released. Sheely.Br.29-32; Troyan.Br.31-33. Any objection on that ground fails.

As an initial matter, Objectors Sheely, Troyan, and Freeze were all Ohio citizens at the time of the derailment. Sheely.Objection, R.485 ¶4, PageID#7304; Troyan.Objection, R.516-6, PageID#10850; Freeze.Decl., R.725-4 ¶1, PageID#51817. The district court granted Norfolk Southern's motion to dismiss as to the Ohio-law medical-monitoring claims finding it instead to be an element of potentially available damages, MTD.Order, R.428, PageID#5578, thus the release of those dismissed claims is hardly a basis for deeming the Settlement inadequate for those Objectors. *See Flint*, 63 F.4th at 503.

Even as to the non-Ohio Objectors, there is nothing to this argument. Class Counsel "considered the merits of medical monitoring claims and … determined that releasing [them] in exchange for the agreed compensation was fair, reasonable, and adequate." Memo.ISO.Final.Approval, R.518-1, PageID#10931-932. This decision to release a small subset of the claims alleged was a reasonable compromise in light of the substantial relief the Settlement secures.[11] Indeed, it is even more reasonable in light of the $25,000,000 medical-monitoring fund established in another, related

---

[11] Additionally, class members who voluntarily receive Personal Injury Payments can use that recovery for monitoring testing. Memo.ISO.Final.Approval, R.518-1, PageID#10932.

case. Consent.Decr., *Ohio v. Norfolk S. Corp.*, No. 23-cv-517 (N.D. Ohio filed May 23, 2024), Dkt.138-1, Art.XI ¶¶48-50; *see also* Fair.Hear.Tr., R.553, PageID#14461 (district court opining it would be redundant to have medical monitoring in both). Objectors offer nothing more than *ipse dixit* to contest that conclusion. Courts "should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel," *Robinson*, 566 F.3d at 649 (emphasis omitted), especially when the objections boil down to "but we wanted more."

As for their remaining objections to the adequacy of relief, Objectors fail to acknowledge the full suite of remedies available under the Settlement. Personal injuries traceable to the derailment may never arise or may arise only "decades down the road" (when causation will be difficult to prove). Fair.Hear.Tr., R.553, PageID#14479. Precisely because of those uncertainties, the Settlement offers class members not only guaranteed substantial recovery for lost property value and lost business, but also—only through voluntary participation—for potential personal injury. As Class Counsel explained at the fairness hearing (and as summarized above), the Settlement contains "a voluntary component" under which, class members who are "concerned about future health risks" (and who live "within a 10-mile radius" of the derailment) "may avail themselves of … significant sums of monetary compensation, in addition to what they're receiving from the direct payment or the business loss component." *Id.*, PageID#14476. Given that "all agree

[that] it's going to be decades from now before [any] symptoms manifest," *id.*, this aspect of the Settlement provides substantial relief. And, of course, eligible class members who prefer to maintain potential future causes of action for personal injury need not participate in this aspect of the Settlement.

Finally, the adequacy of the settlement must be judged in light of circuit law expressing considerable skepticism about numerous merits issues that arise in train-derailment cases involving toxic chemicals. *See, e.g.*, *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359 (6th Cir. 2011). The district court was well aware of that caselaw from the motion-to-dismiss proceedings. Given the hurdles this case would need to clear in this Court, the district court was well within its discretion in concluding that the relief provided by the Settlement was adequate.

3. Unable to mount a serious substantive challenge to the Settlement, Objectors ask this Court to vacate the final order approving it on the ground that the district court failed to show its work to Objectors' satisfaction. Sheely.Br.35-36; Troyan.Br.36-38. The Court should decline the invitation.

To be sure, a district court evaluating a class-action settlement cannot "merely recite the respective arguments of the objectors and parties, and then offer up platitudes about the risks of litigation generally" and call it a day. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016). But that is not what happened here. "In approving the settlement, the Court reviewed extensive

briefing and conducted a Fairness Hearing, at which it heard thorough arguments from the parties, posed questions to Class Counsel, and addressed each Objector's arguments." Bond.Order, R.733, PageID#51931. "The Court also considered the Declaration of U.S. District Judge Layn R. Phillips (retired) …, who served as the mediator and made the recommendation that resulted in the settlement." *Id.* Armed with reams of evidence, stacks of briefs, Judge Phillips' mediator report, and hours of argument, the district court concluded that the relief the Settlement provides "is fair, adequate, and reasonable" in light of "the complexity" of the issues, which cloud the class' ultimate "likelihood of success on the merits." Final.Appr.Order, R.557, PageID#14583. Rule 23(e) requires no more.

Courts are generally reluctant to impose requirements that lower courts write up their opinions or show their work, and that remains true in the settlement context. The Supreme Court has long made clear that appellate courts should be "reluctant to attack" a district court's settlement approval "solely because" they believe "the court failed adequately to set forth its reasons." *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 437 (1968). And that goes doubly when, as here, "the record contain[s] adequate facts to support the decision." *Id.*

While it is certainly true that the district court could have said more on the merits, the Objectors never lodged that complaint in the district court. Once

Objectors saw the district court's fairness decision, they could have filed a motion invoking *Shane Group* and asking for further discussion of the merits. There is every reason to think that the district court would have elaborated its analysis; indeed, it did so in the course of imposing a bond requirement. Bond.Order, R.733, PageID#51931. But Objectors never gave the district court that chance. There is no basis for elongating these proceedings and delaying recoveries for class members and closure for the community, just so the district court can further underscore that the road of further litigation guaranteed years of delay without any guarantee of success when the last appeal was exhausted.

At bottom, this Court's "task is not to decide whether one side is right or … has the better … arguments," but to ensure that "the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. No one could seriously claim that the parties are using the Settlement to do anything other than resolve a legitimate—and legitimately complicated—dispute. Class Counsel fought off numerous dispositive motions to keep the case alive, but did not secure total victory at any stage—demonstrating that while there is real merit to the class' claims, ultimate success here is far from a sure thing. *See* Memo.ISO.Final.Appr., R.518-1, PageID#10919 (Class Counsel expressing "confidence in the facts and legal theory that underpin the Class's claims," but acknowledging "the claims present complex and novel issues, increasing the risk faced by the Settlement

Class"). The downside risks are heightened, moreover, given Norfolk Southern's repeated indications that it would appeal any adverse judgments, including at both the class-certification and final-judgment stages. Against that backdrop, there is no doubting the substantial and timely relief provided in the Settlement, as the court found.

### D. Class Members Were Treated Equitably Relative to One Another.

The final Rule 23(e)(2) factor requires courts to consider whether the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The district court correctly found the Settlement satisfied this requirement. Final.Appr.Order, R.557 ¶12, PageID#14583.

The Direct Payments program utilizes factors across over a dozen categories of information to create a pro rata share per household out of recognition that "although all eligible Class Members experienced similar types of damages … the severity of those damages may vary significantly." Distr.Plan.Memo, R.519-1, PageID#11225-227. The same logic applies for the point system used for those who voluntarily participate in to the Personal Injury Payments. *Id.*, PageID#11227-229. And because business losses are more readily calculable, those who experienced business losses stand to recover based on their actual documented losses. *Id.*, PageID#11229-230. The plan thus reflects sensible and equitable judgments at every turn.

Objectors nonetheless suggest that the Settlement does not treat class members equitably because Class Representatives received $15,000 service awards in addition to their shares of the Settlement.  *See* Sheely.Br.38-39; Troyan.Br.39-41. Once again, this argument is new on appeal:  No Objector raised this issue below. *See* Sheely.Objection, R.485, PageID#7304-318; Troyan.Objection, R.516-6, PageID#10850-852; Freeze.Objection, R.516-6, PageID#10822-823; Lynch.Objection, R.516-6, PageID#10830-832; Tunno.Decl., R.711, PageID#51592-596.  So this Court should not consider it.  *See Ellison*, 462 F.3d at 560.

The belated objection is meritless in all events.  As the district court explained, service awards "are typically awards to class representatives for their often extensive involvement with a lawsuit."  Atty.Fee.Order, R.556, PageID#14557 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).  This case is the poster child for "extensive involvement" by the named plaintiffs.  Class Representatives devoted substantial hours to this case, "sitting for depositions, allowing their home and property to be inspected, providing pertinent information about their losses, searching for and providing documents and information in response to discovery requests, regularly communicating with their counsel about the case, and reviewing and approving the proposed Settlement," and "[t]heir work was a critical part of securing the benefits to the Class."  *Id.*, PageID#14577.

Objectors cite one case from this Court faulting wide disparities in the benefits available to the class representatives vis-à-vis the class as a whole. Sheely.Br.38 (referencing *Franks v. Kroger Co.*, 649 F.2d 1216, 1226 (6th Cir. 1981)); Troyan.Br.40 (same). *Franks* is readily distinguishable. In that case, a district court approved a settlement where class representatives received "monetary and/or employment considerations" for settling, while other class members only got "notice" of job vacancies and training programs and an agreement by the company to follow certain hiring policies. *Franks*, 649 F.3d at 1219. That substantial difference in kind—where only the class representatives obtained a monetary recovery—bears no resemblance to the commonplace practice of granting service awards to Class Representatives to reflect their dedicated efforts to the litigation and Settlement.

Ultimately, the service awards for Class Representatives act to make the Settlement's treatment of class members *more* equitable, as it reflects the substantial time and effort the Representatives put into this litigation. The Settlement treats class members equitably; this Court should affirm.

### E. The District Court Properly Assessed Counsels' Request for Costs and Fees.

In their final attacks on the Settlement approval, Objectors contend that the district court insufficiently scrutinized the timing and amount of Class Counsel's fee award. Sheely.Br.42-46; Troyan.Br.44-47. Both arguments should be rejected.

1. An initial obstacle for Objectors is that they only appealed the district court's final approval of the Settlement. Sheely.Not.App., R.558, PageID#14587; Troyan.et.al.Not.App., R.570, PageID#14768. But the district court noted in its Settlement approval order that the "application for attorneys' fees, [and] expenses" was "the subject of [a] separate contemporaneous Order[] of the Court." Final.Appr.Order, R.557, PageID#14580; *see also* Atty.Fee.Order, R.556, PageID#14547. Objectors needed to appeal from that separate order if they wanted to raise a fees-objection in this Court—they did not do so. Fed. R. App. P. 3(c)(1)(B); *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008). Accordingly, this Court lacks jurisdiction over Objectors' arguments relating to the attorneys' fees award.

2. Objectors' complaints are meritless in all events. Objectors argue that any discussion of attorneys' fees needed to wait until after the Settlement was approved by the court. Sheely.Br.42-44; Troyan.Br.44-46. No case from this Court supports such a rule, and a number of cases make clear that it is not the law of this Circuit. In *Gascho*, for instance, a magistrate judge approved settling parties' negotiation of attorneys' fees after reaching agreement on class relief but before the settlement received court approval. 2014 WL 1350509, at *25 (S.D. Ohio April 4, 2014). The magistrate judge specifically rejected an objector's suggestion that "a settlement cannot be fair if attorneys' fees are negotiated prior to final settlement approval,"

noting "there is no such requirement in Rule 23." *Id.* The magistrate judge also ended by noting that such a requirement could "prove detrimental to class recovery" as it would increase expenses and risks associated with class settlement. *Id.* The district court affirmed the report and recommendation, 2014 WL 3543819 (S.D. Ohio July 16, 2014), and this Court affirmed the district court, 822 F.3d 269.

The same sequence was followed here, except the parties did not even negotiate the fee. Class Counsel stated on the record that attorneys' fees were not discussed with Norfolk Southern *until after* the parties had agreed to the Settlement, and all that was discussed was that Class Counsel would petition the court for attorney's fees and that any fee would be paid from the Settlement fund; nothing in the record contradicts that. *See* Memo.ISO.Atty.Fees, R.520-1, PageID#11322; Settlement, R.452-2, PageID#6028. Objectors ask this Court to ignore the record evidence because they claim it is "self-serving," Sheely.Br.42; Troyan.Br.44, but (as with so many of Objectors' arguments) they point to nothing to undermine the veracity of Class Counsel's account; nor do they indicate what other evidence they believe should have been examined.

3. As to the amount awarded, Objectors do not articulate a specific qualm with any clarity. *See* Sheely.Br.42-44; Troyan.Br.44-46. Regardless, the requested amount was reasonable, and the district court did not abuse its discretion.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279. To determine reasonable attorneys' fees, district courts "must engage in a two-part analysis," wherein they first "must select a method by which to calculate the attorneys' fees—either the percentage approach of the lodestar approach." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). "District courts have the discretion to select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Gascho*, 822 F.3d at 280 (quotation marks omitted). Courts must then weigh the six factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *See Cardinal Health*, 528 F.Supp.2d at 760.

The district court analyzed Class Counsels' requested attorneys' fees to pay the 40 firms that worked on this case, explaining its choice to use the percentage-of-the-fund approach, concluding that all six *Ramey* factors supported the requested amount, and finding that the requested amount was comparable to fees awarded in other common fund cases. Atty.Fee.Order, R.556, PageID#14555-557,14562-575.

Objectors do not raise any challenge to the district court's decision to use the percentage-of-the-fund approach or with the court's analysis of most of the *Ramey* factors. Objectors' critique—which appears only in a footnote—instead rests on the

hourly-value-of-the-services *Ramey* factor (also known as a lodestar crosscheck); at bottom, they argue that the hourly rates are too high. *See* Sheely.Br.43 n.19; Troyan.Br.45 n.20. Even assuming this passing footnote suffices to preserve this argument, *but see Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1058-59 (6th Cir. 1995), it is wrong twice over. First, the (unreported) cases they cite were not class actions, did not involve tens of thousands of hours of attorney work, and were not even particularly complicated, which makes them wholly inapposite. Second, both Objectors' cited cases utilized the lodestar approach as the primary consideration, so they are less instructive in a percentage-of-the-fund case where courts do not have to perform a lodestar crosscheck. *See* Atty.Fee.Order, R.556, PageID#14570 (collecting cases); *see also* Fitzpatrick.Decl., R.520-3, PageID#11465-466 (endorsing not performing lodestar crosscheck in percentage-of-the-fund cases).

The court also indicated that when the crosscheck is performed, it does not need to be "exhaustive or precise … lest [it] sacrifice[s] the advantages of the percentage-of-the-fund method." Atty.Fee.Order, R.556, PageID#14570 (collecting cases). Rather, a court "may rely on summaries of Class Counsel's hourly billing records and its own familiarity with the case to determine the reasonableness of the percentage award." *Id.*, PageID#14571. Taking all this together, the court concluded that "[b]ased on" the number of hours spent and "prevailing national market rates

for attorneys' fees in complex class action litigation, the fees requested" were reasonable. *Id.* Professor Fitzpatrick echoed this reasonableness finding. Fitzpatrick.Decl., R.520-3, PageID#11467.

Objectors also make the head-scratching claim that Class Counsel altogether surrendered its ability to obtain attorneys' fees because it "fail[ed] to pursue punitive damages" in the Settlement. Sheely.Br.45-46; Troyan.Br.47 (citing Ohio tort cases). This makes no sense. A decision to settle litigation where Plaintiffs actively sought punitive damages in no way indicates that Class Counsel surrendered a claim to those damages or that the risk of punitive damages is not reflected in the settlement amount.

## II.    The Opt-Out Period And Notice Were Sufficient.

### A.    The District Court Did Not Abuse Its Discretion in Denying a Motion for Enlargement of Time to Opt Out.

"Courts usually establish a period of thirty to sixty days … following mailing or publication of the notice for class members to opt out." *Annotated Manual for Complex Litigation* §21.321 (4th ed. Sept. 2024 Update); *accord* 2 *McLaughlin on Class Actions* §6:18 (21st ed. Oct. 2024 Update); *see also id.* §6:18 n.1 (collecting cases). Thirty days is not a talismanic number; courts have approved considerably shorter opt-out periods. *See, e.g.*, *Grunin v. IHOP*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days). Objectors nonetheless contend that the 31-day opt-out period here was too short as a matter of law, and the district court abused its discretion by not

enlarging it.  Sheely.Br.14-17; Troyan.Br.16-19.  But Objectors do not argue that they (or anyone else) suffered any actual prejudice from the 31-day period.  Nor do they cite a single case finding a period above 30 days to be inadequate.  To the best of our knowledge, there is none.

To be sure, Objectors cite various secondary sources expressing a preference for longer periods.  *See* Sheely.Br.15-16; Troyan.Br.17-18.  But, critically for this issue—reviewed for abuse of discretion—*each source acknowledges that 31 days is sufficient*.  Objectors' state that the Manual for Complex Litigation "counsels a minimum 60-day opt out period." Sheely.Br.15; Troyan Br.17.  In realty, the Manual states that courts' normal practice is to set a period of "**thirty to sixty days**." *Annotated Manual for Complex Litigation* §21.321 (4th ed. Sept. 2024 Update) (emphasis added).  Objectors cite the Federal Judicial Center's resource for judges reviewing a class-action notice program.  Sheely.Br.15-16 (citing Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 4 (2010)); Troyan.Br.17-18 (same).  Again, the checklist explicitly states that "**[a] minimum of 30 days**" is required.  Fed. Jud. Ctr., *supra*, at 4 (emphasis added). Finally, Objectors claim that Newberg and Rubenstein "calls for a 60-day minimum," Troyan.Br.18 (citing 3 *Newberg and Rubenstein on Class Actions* §8:16 (6th ed. Nov. 2024 Update)); Sheely Br.16 (similar), but it plainly does not, *see* 3 *Newberg and Rubenstein*, *supra*, §8:16 & n.7 (collecting cases where periods of "one

month or less have been found adequate"). In short, it was completely within the district court's discretion to conclude that a 31-day opt out period was sufficient.

That conclusion is even more obvious when one considers the nature of this case and the extent of the notice program. This was not some obscure class action pursued on behalf of individuals dispersed across the nation, most of whom were not even aware they were injured. Given the nature of the derailment and the geographic focus of this class, it is hard to believe that class members were not aware of this litigation even before the notice process began. The derailment escaped no one's notice, and the litigation had been ongoing for over a year and received widespread media coverage by the time notice was sent. Objectors critique the notice program by suggesting that media coverage is not indicative that class members received adequate information because not all class members subscribe to that kind of media and news stories might not have sufficient details of the settlement. *See* Sheely.Br.16; Troyan Br.18. But that ignores both the nature of this case and that notice efforts went far beyond news media. The notice program involved direct notice of the settlement via First Class U.S. Mail for residents and businesses within a 20-mile radius of the derailment site, local newspaper publications in 10 surrounding communities, geo-targeted online display banner advertising, Google keyword search advertising, social media advertising, and a geographically targeted press release. Finegan.Decl., R.495-1, PageID#8892. Class Counsel also held a

number of both in-person and Zoom community meetings after the settlement was announced.  Fair.Hear.Tr., R.553, PageID#14474.  And, on top of all this, Class Counsel opened a Claims Center on June 3, 2024, where community members could go ask questions.  Graham.Decl., R.518-2 ¶62, PageID#10958.  Members of the Class Counsel team, the Plaintiffs' Executive Committee, and the Plaintiffs' Steering Committee were all available at the Center.  Fair.Hear.Tr., R.553, PageID#14474.

The notice program was extensive, and a 31-day opt-out period was sufficient.

## B.    The Notice Satisfied Rule 23(c) and Due Process.

Objectors' arguments about the contents of the notice fare no better.  Objectors contend that the notice failed to inform class members about potential availability of punitive damages.  Sheely.Br.17-18; Troyan.Br.19-21.  They also complain that the notice failed to mention that medical-monitoring claims were being released, to inform class members that they needed to opt out to preserve emotional-distress or non-physical-injury claims, and to discuss strict liability for certain torts. Sheely.Br.26, 29-32; Troyan.Br.28, 30-33.  All these arguments are meritless.[12]

---

[12] Objectors raised other alleged inadequacies in their respective briefs.  *See* Sheely.Br.5, 11; Troyan.Br.5, 13.  These pages, though, are in their "Statement of the Case" and "Summary of the Argument" sections.  There is no development of an alleged inadequacy different from those listed in text above, so this Court should deem those additional arguments to be forfeited. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013).  Regardless, Objectors' allegations that the notice did not contain information about class representatives' service awards and class counsels' fees and costs, Sheely.Br.11; Troyan.Br.13, are flat wrong.  The Long Form Notice addresses both of those matters.  Long.Form.Not., R.452-5, PageID#6132.

At the outset, no Objector raised any of these alleged deficiencies below. *See* Sheely.Objection, R.485, PageID#7304-318.; Troyan.Objection, R.516-6, PageID#10850-852; Freeze.Objection, R.516-6, PageID#10822-823; Lynch.Objection, R.516-6, PageID#10830-32; Tunno.Decl., R.711, PageID#51592-596. These arguments are therefore forfeited. *Ellison*, 462 F.3d at 560.[13]

They are also meritless. The Supreme Court has articulated that absent class plaintiffs only receive "minimal procedural due process protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). To satisfy this relatively low threshold, the Court articulated that absent plaintiffs "must receive notice" which it said "should describe the action and the plaintiffs' rights in it." *Id.* at 812. This Court has clarified that "[d]ue process … does not require the notice to set forth every ground on which class members might object to the settlement" but rather must only "fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (quotation marks and citations omitted). In

---

[13] The only argument regarding the notice Objectors raised below was Sheely's complaint that the notice did not disclose the allocation formula. Sheely.Objection, R.485, PageID#7316-317. On appeal, he raises that argument only in a perfunctory manner in his "Statement of the Case." Sheely.Br.5. That argument should, therefore, be considered forfeited. *See* n.12 *supra*.

addition to due process, Rule 23(c)(2)(B) requires the notice to "clearly and concisely state in plain, easily understood language"—as relevant here—"the nature of the action" and "the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B). The notice here meets each requirement.

Paragraph (1) describes the nature of the lawsuit, Long.Form.Not., R.452-5, PageID#6131, satisfying both Rule 23(c)(2)(B)(i) and due process, *see Phillips*, 472 U.S. at 812. It also discusses the types of claims and damages pursued in the lawsuit, which satisfies Rule 23(c)(2)(B)(iii). Long.Form.Not., R.452-5, PageID#6131. And the notice goes on to describe in a set-apart box what class members' rights and options were. *Id.*, PageID#6130-31. Due process and Rule 23 require no more.

Objectors' arguments to the contrary are unconvincing. First, Plaintiffs are not aware of any case supporting Objectors' theory that a class-action notice must discuss in granular detail remedial issues like the potential availability of punitive damages or the difference between strict liability and negligence or recklessness. *Contra* Sheely.Br.17-18, 29; Troyan.Br.19-21, 30-31. Punitive damages and strict liability do not go to the "nature" of the case or the "claims, issues, or defenses." *See* Fed. R. Civ. P. 23(c)(2)(B)(i), (iii). Requiring that sort of detailed information would defy long-settled law holding that a class-action notice need not "set forth every ground on which class members might object to the settlement," *Vassalle*, 708 F.3d at 759, and would risk turning class-action notices into lengthy recitations of

everything in the relevant court documents, thereby undermining their notice function. In this context, over-disclosure is as much of a vice as under-disclosure, which is why there has to be play in the joints to strike the right balance.

And the balance struck here is particularly appropriate given the notice alerts class members to their ability to access the operative complaint on the Settlement website. Long.Form.Not., R.452-5, PageID#6133 (listing website information); *cf. UAW*, 497 F.3d at 630 (finding class notice satisfactory where "enclosed with the notice was a copy of the settlement agreement"). In effect, then, class members had full access to the document that would inform them about punitive damages and strict liability.

Objectors' complaints regarding released claims, Sheely.Br.26, 30-32; Troyan.Br.28, 31-33, are similarly meritless. The notice informed class members that if the district court approved the settlement, they would "not be able to sue, continue to sue, or be part of any other lawsuit against Norfolk Southern relating to the claims that were or could have been asserted in the First Amended Master Consolidated Class Action Complaint" and provided the website where that document could be accessed. Long.Form.Not., R.452-5, PageID#6133. The notice reiterated this loss of claims in paragraph (11), where it said that if a class member did nothing, she would get no payment or benefit and would not be able to start or continue a lawsuit or "be part of any other lawsuit against Norfolk Southern relating

to the Incident," except for a lawsuit for a "personal injury" claim. *Id.*, PageID#6135. And though the notice did not explicitly state which claims were being released, it notified class members that the notice "simply summarizes the proposed Settlement" and indicated they could get a copy of the entire Settlement by visiting the settlement website. *Id.* Simply reading the "Released Claims" definition of the Settlement would have informed Objectors that "medical monitoring" and "mental or emotional injury or harm" claims were subject to release. Settlement, R.452-2 §II.MM, PageID#6012. This does not require an "exalted level of literary sleuthing" or take us down the rabbit hole into Wonderland. *Contra* Sheely.Br.31-32; Troyan.Br.32-33. Class members had notice and access to all relevant information the district court considered and can claim no issue with the notice. *See UAW*, 497 F.3d at 630.

## III. There Is No Basis For Reassignment.

1. "[T]he principal factors considered" to determine if reassignment is merited under 28 U.S.C. §2106 are:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Armco*, 280 F.3d at 683.  All factors here point in the same direction:  There is no reason to reassign the case, and every reason not to.

Objectors have made no suggestion and proffered no evidence that in the event of a remand Judge Pearson would "have substantial difficulty" in properly assessing the case on remand and "putting out of … her mind previously-expressed views or findings determined to be erroneous."  *See id.*  Objectors do not do much more on the appearance-of-justice-factor, simply asserting, without development, that this factor "clearly applies."  Sheely.Br.50; Troyan.Br.52.  (It does not.)  And, contrary to Objectors' assertion that a remand would indicate Judge Pearson "failed to invest the time and effort to familiarize herself" with the intricacies of this case, Sheely.Br.50; Troyan.Br.52, Judge Pearson's year-and-a-half with this case, its motions practice, exhaustive discovery, and other issues strongly favor keeping the case with her as reassignment would create (even more) unnecessary delay as a new judge got up to speed.  Given that Objectors have not put forth a convincing (or even mildly persuasive) argument for why this case should be reassigned under 28 U.S.C. §2106, this Court should reject such an invitation if it chooses to remand (which it should not).

2. Objectors' real beef seems to be a belief that Judge Pearson has personal bias against them and their Counsel, which they claim justifies reassignment under 28 U.S.C. §144.  *See* Sheely.Br.47-50; Troyan.Br.49-52.  But, to state the obvious,

the fact that a judge overrules a party's objections is not indicative of animus. And if the judge begins to take pleadings by certain litigants or advocates with a grain of salt given their experience in handling the case and reviewing earlier filings, that is the antithesis of the kind of extrajudicial *personal* bias about which §144 is concerned. To justify reassignment under §144, the alleged bias "must 'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case.'" *Youn*, 324 F.3d at 423. Here, however, any supposed bias against Objectors has come from Judge Pearson's involvement in this case. *See* Sheely.Br.46-47; Troyan.Br.48-49.

Objectors' §144 argument also fails for procedural reasons. The statute requires a party seeking to have a judge removed from a case to "file[] a timely and sufficient affidavit" that "state[s] the facts and reasons for the belief that bias or prejudice exists." 28 U.S.C. §144. Reassignment "is never granted without the affidavit." *Youn*, 324 F.3d at 423. But Objectors have not filed the required affidavit.

## CONCLUSION

Objectors have raised a bevy of perceived inadequacies in the Settlement and the decision upholding it. None of those objections comes close to showing that the district court abused its considerable discretion, but all threaten to further delay the provision of meaningful relief to the class. That delay would be problematic in any

case, but here the need for compensation and closure are particularly acute. For the reasons set forth above, this Court should affirm.

Respectfully submitted,

M. ELIZABETH GRAHAM
ADAM J. GOMEZ
GRANT & EISENHOFER P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801

s/Paul D. Clement
PAUL D. CLEMENT
MATTHEW D. ROWEN
KYLE R. EISWALD*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
* Supervised by principals of the firm who are members of the Virginia bar

MARK CHALOS
LIEFF CABRASER HEIMANN
  & BERNSTEIN LLP
222 Second Avenue S., Suite 1640
Nashville, TN 37201

SETH A. KATZ
BURG SIMPSON ELDREDGE
  HERSH & JARDINE, P.C.
40 Inverness Drive E.
Englewood, CO 80112

JAYNE CONROY
SIMMONS HANLY CONROY LLP
112 Madison Avenue, 7th Floor
New York, NY 10016

MELANIE S. BAILEY
BURG SIMPSON ELDREDGE
  HERSH & JARDINE, P.C.
201 E. Fifth Street, Suite 1340
Cincinnati, OH 45202

JO ANNA POLLOCK
SIMMONS HANLY CONROY LLP
One Court Street
Alton, IL 62002

*Counsel for Plaintiffs-Appellees*

February 3, 2025

**CERTIFICATE OF COMPLIANCE**

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,985 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and 6th Cir. Rule 32(b).

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

Date:  February 3, 2025

<u>s/Paul D. Clement</u>
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Paul D. Clement</u>
Paul D. Clement

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Plaintiffs-Appellees, pursuant to 6th Circuit Rules 28(a) and 30(g), designate the following relevant documents in the electronic record:

| Record Entry | Description of Document | Page ID # |
|---|---|---|
| 20 | Order re. Class Structure | 127 |
| 28 | Order re. Consolidation and Interim and Co-Lead Class Counsel | 549 |
| 30 | Consolidation Order | 665 |
| 31 | Original Master Consolidated Class Action Complaint and Jury Demand | 667 |
| 76-1 | Norfolk Southern's Memorandum in Support of Motion to Dismiss Original Complaint | 1001 |
| 98 | Case Management Conference Order | 1164 |
| 103 | Plaintiffs' Memorandum in Opposition to Motion to Dismiss | 1204 |
| 138 | First Amended Master Consolidated Class Action Complaint and Jury Demand | 1771 |
| 205 | GATX Corp. and Gen. Am. Marks Co.'s Motion to Dismiss | 2301 |
| 206 | Trinity Indus. Leasing Co.'s Motion to Dismiss | 2341 |
| 206-1 | Trinity Indus. Leasing Co.'s Memorandum of Law in Support of Motion to Dismiss | 2344 |
| 207 | OxyVinyls LP's Motion to Dismiss | 2389 |
| 207-1 | OxyVinyls LP's Memorandum in Support of Motion to Dismiss | 2391 |
| 232 | Plaintiffs' Memorandum in Opposition to GATX and Gen. Am. Marks' Co.'s Motion to Dismiss | 2863 |
| 233 | Plaintiffs' Memorandum in Opposition to OxyVinyls' Motion to Dismiss | 2900 |
| 234 | Plaintiffs' Memorandum of Law in Opposition to Trinity Indus. Leasing Co.'s Motion to Dismiss | 2973 |
| 428 | Memorandum of Opinion and Order Granting in Part and Denying in Part Norfolk Southern's Motion to Dismiss | 5541 |
| 452-2 | Class Action Settlement Agreement | 6001 |
| 452-5 | Long Form Notice of Settlement Agreement | 6129 |

| Record Entry | Description of Document | Page ID # |
|---|---|---|
| 458 | Order Granting Preliminary Approval of Settlement, Appointment of Lead Class Counsel, and Approval of Notice | 6174 |
| 485 | Rev. Joseph Sheely Objection to Settlement Agreement | 7304 |
| 495-1 | Declaration of Jeanne C. Finegan | 8883 |
| 516-6 | Tamara Lynn Freeze Objection to Settlement Agreement | 10822 |
| 516-6 | Sharon Lynch Objection to Settlement Agreement | 10830 |
| 516-6 | Zsuzsa Troyan Objection to Settlement Agreement | 10850 |
| 518-1 | Plaintiffs' Memorandum in Support of Final Approval of Settlement | 10899 |
| 518-2 | Declaration of M. Elizabeth Graham | 10942 |
| 518-5 | Declaration of Judge Layn R. Phillips in Support of Approval of Class Action Settlement | 11085 |
| 519-1 | Plaintiffs' Memorandum in Support of Approval and Implementation of the Plan of Distribution | 11215 |
| 520-1 | Plaintiffs' Memorandum in Support of Application for Attorneys' Fees and Expenses and for Service Awards | 11307 |
| 520-3 | Declaration of Brian T. Fitzpatrick | 11446 |
| 553 | Transcript of Fairness Hearing | 14423 |
| 555 | Order Approving Distribution Plan | 14543 |
| 556 | Order Granting Attorneys' Fees | 14547 |
| 557 | Final Settlement Approval Order | 14580 |
| 558 | Sheely Notice of Appeal | 14587 |
| 570 | Troyan et al. Notice of Appeal | 14768 |
| 711 | Declaration of Carly Tunno | 51592 |
| 725-4 | Declaration of Tamara Freeze | 51817 |
| 733 | Order Requiring Objector Rev. Joseph Sheely to Post an Appeal Bond | 51926 |